Alonzo Wayne TAYLOR, Appellant,

v.

The WASHINGTON TERMINAL COM-
PANY, Appellee.

No. 21970.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 18, 1968.

Decided Feb. 20, 1969.

Petition for Rehearing Denied
April 8, 1969.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellant Taylor sued appellee railroad under the Federal Employers' Liability Act[1] for personal injury resulting from appellee's alleged negligence. A jury returned a verdict of $80,000 for appellant. The railroad moved for a new trial on the ground that the verdict was excessive,[2] and the District Court granted the motion, with the proviso that it should be denied if appellant made a remittitur of $60,000. Appellant refused to make the remittitur, and the case proceeded to a second trial. Again a verdict was returned for appellant, though this time only $25,000 in damages was awarded. On appeal Taylor argues that the trial judge abused his discretion in granting the remittitur.[3] We set aside the District Court's order of a new trial and order reinstatement of the original verdict for appellant.

I

Appellant Taylor is a fireman employed by appellee, a railroad company which functions primarily as a switching terminal. On July 28, 1963, in the course of his duties, Taylor alighted from a diesel engine which he was inspecting, and after taking a few steps tripped over an electric cable which was lying on the walkway between the tracks. As he fell he struck his arm against a steel water plug. The evidence established to the satisfaction of the jury what is not in dispute here—that the railroad was negligent in allowing the cable to be where it was.

Appellant was taken to a hospital, his arm was placed in a cast, and he was released. He experienced persistent pain

Mr. James R. Scullen, Washington, D. C., for appellant.

Mr. Stephen A. Trimble, Washington, D. C., with whom Mr. Thomas A. Flannery, Washington, D. C., was on the brief, for appellee.

1. 45 U.S.C. §§ 51–60 (1964).

2. Rule 59(a), FED.R.CIV.P., provides in pertinent part:

   "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States * * *."

3. Appellant also raises statutory and constitutional arguments against the device of remittitur which, in view of our disposition of the case, we do not reach.

in his wrist, and upon the recommendation of two doctors underwent an operation some months later in which his wrist was fused into an immovable joint.[4] Even after the operation, pain and swelling persisted in the wrist, so that he could perform only light duty in his job for some months. During this period he consistently took asprin for relief of the pain.

In August 1965, more than two years after the accident and more than a year after the operation on his wrist, Taylor complained of pains in his stomach. Within a few days he was admitted to the hospital, where he was determined to have a duodenal ulcer. He was hospitalized again in September when the ulcer began to bleed, and in November he underwent an operation in which 75 per cent of his stomach was removed.

After the operation he returned to work and was still working at the time of the first trial in 1967. He experienced intermittent stomach pains, nausea and difficulty in swallowing as well as continuing though not constant pain in his wrist. Appellant showed special damages of something over $10,000 in wages lost and medical expenses, about half of which were attributable to the wrist injury and about half to the ulcer.

A major issue litigated at trial was the causal relationship between the original injury to appellant's wrist, with its consequent pain, corrective surgery and medication, and the development of his ulcer. The medical testimony on this question was divided. The railroad doctor who had treated appellant testified that no causal link could be established. A second doctor, who had done research in the field of gastric disorders, testified that in the present state of medical knowledge the cause of a particular ulcer could not be determined with certainty. A third doctor was satisfied that the steady ingestion of salicylates to relieve the pain of the wrist injury, coupled with the stress brought about by that injury, had caused appellant's ulcer. He gained some support from the second doctor who, while unable to locate a cause of the ulcer, testified that his research had shown aspirin and related medications to accompany the worsening of ulcers.

## II

Appellant argues that the trial judge's order of remittitur at the close of the first trial was an abuse of discretion. Appellee argues first that this question is not properly before us on this appeal, and second that it was within the trial judge's discretion to find the verdict of $80,000 excessive.

With respect to the railroad's jurisdictional contention, we find that the remittitur order is properly before us for review. The grant or denial of a new trial is not a final judgment, and hence is not appealable.[5] However, when an appealable final judgment is entered, appeal brings up the entire record for review, including interlocutory orders.[6] Thus the grant of a new trial may be reviewed upon appeal of a judgment granted after the second trial.[7]

A more difficult question is the scope of appellate review of an order granting a new trial. It is by now standard doctrine that such orders may be reviewed for abuse of discretion, even when based upon such broad grounds as the trial judge's conclusion that the verdict was excessive or was against the weight of the evidence.[8] There has been much discussion of the content which should be given to the elusive phrase

---

4. Appellant had a pre-existing 25 per cent permanent disability in his wrist. The fusion operation left him with a 40 per cent permanent disability.

5. 6A J. MOORE, FEDERAL PRACTICE ¶ 59.-15[1], pp. 3891–3892 (2d ed. 1966).

6. *Id.*, ¶ 59.15 [3], p. 3901.

7. 3 W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE § 1302.1, p. 346 (Wright ed. 1958).

8. All Circuits except the Eighth have recognized this power of review. 3 W. BARRON & A. HOLTZOFF, *supra* Note 7, § 1302.1, pp. 349–350; 6A J. MOORE, *supra* Note 5, ¶ 59.08 [6], pp. 3836–3840.

"abuse of discretion," with the weight of learning against appellate reversal except in relatively rare cases.[9]

This learning has largely arisen from consideration of cases in which motions for new trial—especially on the ground of excessive verdict—have been *denied*.[10] Two factors unite to favor very restricted review of such orders. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record.[11] The second factor is the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages. This second factor is further weighted by the constitutional allocation to the jury of questions of fact.[12]

■■ Where the jury finds a particular *quantum of damages and the trial judge refuses to disturb its finding on* the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial. However, where, as here, the jury as primary fact-finder fixes a quantum, and the trial judge indicates his view that it is excessive by granting a remittitur, the two factors oppose each other. The judge's unique opportunity to consider the evidence in the living courtroom context must be respected. But against his judgment we must consider that the agency to whom the Constitution allocates the fact-finding function in the first instance—the jury—has evaluated the facts differently.[13]

In this jurisdiction particularly, District Court judges have given great weight to jury verdicts. They have stated that a new trial motion will not be granted unless the "verdict is so unreasonably high as to result in a miscarriage

---

9. A popular slogan is that the appellate court should reverse the trial court's denial of a motion for a new trial on the ground of excessive verdict only when the damage award is "monstrous." *See* Affolder v. New York, Chicago & St. Louis R. Co., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683 (1950). Professor Charles Wright has been a leading exponent of extremely limited review of trial judges' dispositions of motions for new trial. *See* Wright, *The Doubtful Omniscience of Appellate Courts*, 41 Minn.L.Rev. 751 (1957).

10. The discussions of reviewability of dispositions of motions for new trial on the ground of excessive verdict in Wright, *supra* Note 9, 3 W. Barron & A. Holtzoff, *supra* Note 7, § 1302.1, and 6A J. Moore, *supra* Note 5, ¶ 59.08 [6], are almost entirely in terms of the desirability or undesirability of appellate review of damage awards set by juries and left undisturbed by trial courts.

11. 6A J. Moore, *supra* Note 5, ¶ 59.05 [5].

12. Barron and Holtzoff (for whom Professor Wright is the reviser) note that appellate decisions reversing trial courts' denials of new trials on grounds of excessive verdict "are difficult to reconcile with the Seventh Amendment, which provides that 'no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the common law.' * * *" 3 W. Barron & A. Holtzoff, *supra* Note 7, § 1302.1, p. 350.

13. In taking this approach, we follow the lead taken by the Third Circuit *en banc* in a similar case. In Lind v. Schenley Industries, Inc., 278 F.2d 79, *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960), that court reversed a trial court's grant of a new trial because the verdict was against the weight of the evidence. The court distinguished between cases where a new trial is granted because of some legal error and cases in which the trial judge simply reweighed evidence already submitted to a jury. In cases of the latter sort (in which grants of new trials for excessive general damages must be included), "the [trial] judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial." 278 F.2d at 90.

of justice," [14] or, most recently, unless the verdict is "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." [15]

At the appellate level, in reviewing a trial judge's grant of a new trial for excessive verdict, we should not apply the same standard. The trial judge's view that a verdict is outside the proper range deserves considerable deference. His exercise of discretion in granting the motion is reviewable only for abuse. Thus we will reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within "the maximum limit of a reasonable range."

### III

Here we find that this standard for reversing the grant of a new trial is met. Before the accident, appellant was a man in his middle thirties with a partial disability to his wrist. The accident led to a fusion of the wrist, with consequent pain and appoximately $5,000 worth of special damages, and a further permanent wrist disability. This in itself could not have supported an $80,000 verdict. But on the divided medical testimony the jury could have reasonably concluded that the accident proximately caused him to develop an ulcer.[16] The ulcer caused considerable pain and discomfort, and led eventually to the removal of 75 per cent of appellant's stomach.

Thus the jury could reasonably have awarded substantial general damages for the pre-trial period alone, based on pain and suffering. Further, there was testimony that a 10 per cent chance of the ulcer's recurrence remained. Projecting the pain and suffering, the anxiety, and the loss of enjoyment of life reasonably traceable to this stomach condition over appellant's life expectancy, it would be difficult to conclude that an $80,000 award was not clearly within the range of reasonable jury verdicts. And where as here it is clear that the jury has stayed within the reasonable range, the deference due its findings of fact outweighs the deference due the trial judge's first hand review of the evidence. Accordingly, the judgment must be vacated, the order granting the second trial must be set aside, and judgment must be entered on the verdict returned at the first trial.

So ordered.

14. Frank v. Atlantic Greyhound Corp., D. D.C., 172 F.Supp. 190, 191 (1959).

15. Graling v. Reilly, D.D.C., 214 F.Supp. 234, 235 (1963).

16. Appellee urges us to affirm the remittitur order on two alternate theories. The first is the usual one for remittitur: that on all the evidence properly before the jury, taken in the best light for plaintiff, the verdict was outside a reasonable range. The second is a novel combination of two traditional grounds for grant of a new trial: that while there was sufficient evidence that the ulcer was proximately caused by the accident for the jury to consider that question, its apparent conclusion that such a causal link existed was against the weight of the evidence, so that the portion of the verdict attributable to the ulcer might reasonably be ordered remitted under threat of a new trial.

We have found no cases holding, and no scholarly comment suggesting, that a remittitur can be ordered because part of the quantum is attributable to a factual inference which the trial judge thinks is against the weight of the evidence. In the absence of any statement by the trial judge that he was relying on any such novel ground, we decline to construct a new theory for granting a new trial at the appellate level. Rule 59 permits the grant of a new trial only "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States * * *." *See* Note 2, *supra*.