**Larry James MENARD,**
**Plaintiff-Appellee,**

v.

**PENROD DRILLING COMPANY et al.,**
**Defendants-Appellants.**

**The Charity Hospital of Louisiana,**
**Intervenor.**

**No. 75–1591.**

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1976.

---

**7.** *See* Durational Residence Requirements, at 378–79.

**8.** U.S.Const., art. I, § 2.

**9.** U.S.Const., art. I, § 3.

**10.** U.S.Const., art. II, § 1.

Marcel Livaudais, Jr., New Orleans, La., for defendants-appellants.

Darryl J. Tschirn, Gothard J. Reck, Metairie, La., for plaintiff-appellee.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

RIVES, Circuit Judge:

Larry J. Menard, the plaintiff, born on February 27, 1953, was 19 years of age when he got a job with the defendant,

Penrod Drilling Company (hereafter Penrod) as a roustabout working on a submersible drilling rig. In the very early morning hours of October 10, 1972 (about 10 months after his employment by Penrod), Menard was working alone in a storage room of the rig, lifting metal "inserts" [1] off the floor and putting them on a box or shelf about eye level high. Menard testified that he told his tool pusher, Mr. Haley, the inserts were too heavy for one man and "I needed help" but he said "to do the best I could because [we were] short-handed." (App. 462.) Mr. Haley testified differently. Menard further testified that he picked up five or six of the inserts and put them on the shelf or box. The next one slipped in his grasp, he fell backward and down with the insert forcibly striking his abdomen.[2] Menard's tool pusher, Mr. Haley, filled out an accident report (App. 224).

According to Menard, when Haley declined to have anyone drive Menard some 200 miles to his home in Kaplan, Louisiana, Menard, despite much pain, went ashore, got in his car at the dock, and drove home arriving between 3:00 and 4:00 P.M. He stayed in bed at home for several days and

on October 15, 1972 was admitted to the Kaplan Memorial Hospital (App. 505). A surgeon, Dr. Trahan, on October 17, operated on Menard for a bilateral hernia. Menard was discharged from the hospital on October 25 and continued treatment as an outpatient for several weeks (App. 507).

On November 10, 1972, Menard's attorney filed his complaint titled "SEAMAN'S SUIT UNDER THE JONES ACT" (App. 5). The jury did not agree on a verdict at the first trial, and on November 30, 1973 a mistrial was ordered.

Before that trial, Menard had been married twice. His first marriage ceremony was performed on January 20, 1973 and about one week later, on January 28, his bride permanently separated from him stating as her reason that he was "not a man" (App. 509, 510). Menard testified that he got married to another woman in October, 1973, the month before the first trial, but continued to have sexual problems up to the time of his testimony on the second trial.

The second trial occurred on December 12 and 13, 1974. The jury returned a special verdict[3] as follows:

"Interrogatories to the Jury

"1. Was the defendant Penrod Drilling Company negligent? Answer ✓ Yes or ___ No

"If the answer to question No. 1 is YES, answer (a).

"(a) Did that negligence play any part, however slight, in producing plaintiff's [sic] Larry Menard's injury? Answer ✓ Yes or ___ No

1. Metal drilling inserts "are the type of tool that you use to hold your pipe up to keep it from falling down in the hole whenever you are making a connection or screwing in another joint." (App. 559.) "The insert is described as a metal piece of drilling equipment varying slightly in size, but generally being about two to three feet long, six inches thick and somewhat triangular in shape, and of weights varying from 100 to 160 pounds." (Appellants' brief, p. 4.)

2. Menard described the accident in detail as follows:

"Q. Did you fall to the ground?

"A. Yes, when it hit me, I tried to catch it, and it fell straight to the floor with me. I couldn't move at all. It just smashed me, it

went right on the bottom part, right here, the lower portion, and it smashed me up against the floor. Then I screamed for help, and this guy that was in the two storage compartments away from me, he was doing something in the next room, and he came and he tried to help get it off. When he got up there, I told him to try to lift it off of me because if was smothering me. I couldn't breathe.

"He lifted, but he couldn't lift it high enough and it fell down on me again. I told him to lift it up enough so I could roll out. When he lifted it up, I like slid from under. Then he went for the driller on duty that night. . . . " (App. 465.)

3. Under Rule 49(a), Fed.R.Civ.P.

"2. Was the barge and drilling rig #62 unseaworthy?

Answer ____Yes or ✓No

"If the answer to question No. 2 is YES, answer (a).

"(a) Was that unseaworthiness a proximate cause
of plaintiff's [sic] Larry Menard's injury?

Answer ____Yes or ____No

"If the answer to question No. 1(a) or question No. 2(a)
is YES, answer question No. 3.

"3. Was the plaintiff Larry Menard negligent?

Answer ✓Yes or ____No

"If the answer to question No. 3 is YES, answer (a).

"(a) Was that negligence a proximate cause of his
injury?

Answer ____Yes or ✓No

"If the answer to question No. 3(a) is NO,
answer (b).

"(b) Did that negligence play any part, however
slight, in producing plaintiff's injury?

Answer ✓Yes or ____No

"4. If the answer to question No. 3(a) or question No. 3(b)
is YES, to what degree expressed in percentage, did
plaintiff's negligence contribute to his injuries?

____25____ %

"5. If the answer to question No. 1(a) or question No. 2(a)
is YES, state in dollars the amount of plaintiff's
damages.

____$250,000____

" 12/13/74 Elitha A. Grome #18
 Foreman"

(App. 263-264.)

---

Judgment was entered upon that verdict (App. 271) against Penrod and its insurer; the defendants' post-trial motions were denied; and the defendants appealed. We come to the issues raised on appeal by defendants-appellants.

## MENARD'S STATUS AS A SEAMAN

 The district court, at the time of the first trial on November 30, 1973, granted plaintiff's motion for summary judgment as to the status of Penrod's rig # 62 being a vessel in navigation and as to Menard's being a seaman and member of the crew of the said vessel (App. 169). In addition to supporting that motion by a lengthy affidavit (App. 175, 176), the plaintiff introduced a stipulation of the parties to the following facts:

"1. That at the time of the plaintiff's alleged injury he was employed by Penrod Drilling Company;

"2. That at the time of plaintiff's injury he was employed by Penrod Drilling Company aboard their Rig # 62;

"3. That Rig # 62 was a movable drilling barge (jackup rig) owned by Penrod Drilling Company;

"4. That plaintiff was injured while aboard Rig # 62 while in the course and scope of his employment with Penrod Drilling Company;

"5. That Rig # 62 had been completely constructed and delivered to Penrod Drilling Company some months before plaintiff's alleged accident and injury, earlier that year;

"6. That for some time it had been in full operation of drilling for oil in the Gulf;

"7. That at the time of plaintiff's alleged injury, plaintiff and the rest of the crew were preparing Rig # 62 for an overseas tow, to its next drilling location." (App. 177.)

The defendants offered no evidence in opposition to the motion. The plaintiff's affidavit and the stipulation of the parties sufficiently established the absence of a genuine issue of fact to prevent the defendants from relying upon their denials in pleading and to put them to their defense by affidavits or otherwise, setting forth specific facts to show the existence of a genuine issue for trial. See Rule 56(e), Fed.R.Civ.P.

█ The defendants had a further opportunity to offer evidence upon the second trial, or to object to the court's repeated instruction to the jury that "I instruct you that the plaintiff, Larry Menard, was a seaman and that he was employed aboard a vessel within the meaning of the Jones Act." (App. 607, repeated at 631.) When the district judge in the absence of the jury called on counsel for objections to the oral charge, defense counsel made a simple objection to the omission of an unrelated requested charge and characterized that as "the only objection I have."[4]

## SUFFICIENCY OF THE EVIDENCE

The defendants' motions for directed verdict, for judgment n. o. v., and for a new trial were denied.

█ The sufficiency of the evidence to support the verdict is for the jury in the first instance and, under the Seventh Amendment, re-examination of facts found by the jury is strictly limited to the rules of the common law. That constitutional requirement is reinforced by statute in cases brought under the Federal Employers' Liability Act and those under the Jones Act. *Boeing v. Shipman,* 5 Cir. 1969, 411 F.2d 365, 371. (See 46 U.S.C. § 688.)

█ The jury and the district judge were in better position than is this Court to judge the credibility of Menard's testimony. Ultimately the case turns on whether Menard testified truthfully or falsely. The jurors obviously believed his testimony. The able district judge declined to set aside the jury's verdict. The evidence of the defendants' negligence in failing to provide a competent driver of an available forklift or to instruct plaintiff how to operate it and in refusing plaintiff's request for help was sufficient to support the jury's verdict.

█ The judge declined also to hold the amount of the verdict excessive. This Court has held that the court's power to grant a new trial for excessiveness of a verdict, or to condition a new trial upon consent to a remittitur, is "reviewable only for a grave abuse of discretion." *Bonura v. Sea Land Service, Inc.,* 5 Cir. 1974, 505 F.2d 665, 669, 670; *reh. en banc den.,* 1975, 512 F.2d 671. In *Gorsalitz v. Olin Mathieson Chemical Corporation,* 1970, 429 F.2d 1033, 1045, we quoted with approval Judge Skelly Wright's practical test of "abuse of discretion" in a situation like that here presented:

"There has been much discussion of the content which should be given to the elusive phrase 'abuse of discretion,' with the weight of learning against appellate reversal except in relatively rare cases.

"This learning has largely arisen from consideration of cases in which motions for new trial—especially on the ground of excessive verdict—have been *denied.* Two factors unite to favor very restricted review of such orders. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is

---

4. However, we think that the defendants did not have to object to the instruction in order to preserve their right to appellate review of the summary judgment grant.

the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages. This second factor is further weighted by the constitutional allocation to the jury of questions of fact.

"Where the jury finds a particular quantum of damages and the trial judge refuses to disturb its finding on the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial. . . . . "

*Taylor v. Washington Terminal Company,* 1969, 133 U.S.App.D.C. 110, 409 F.2d 145, *cert. den.* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85.

■ The jury's verdict (App. 264) stated "the amount of plaintiff's damages" in one lump sum "$250,000," and the record discloses no request for separation into the various items of damages. The jury found that the plaintiff's negligence contributed 25% to his injuries. There was ample evidence that the plaintiff suffered severe personal injuries and that he had been unable to work since his injury, and would probably continue to be unable to work for a long time.

Mr. W. E. Groves, who qualified as "a consulting actuary," held two master's degrees—one from L.S.U. in Business Administration and the other from the University of Michigan in Actuarial Mathematics (App. 528). Groves estimated plaintiff's work life expectancy at the date of injury to be 39.7 years; his annual wage up to December 31, 1973, to be $6,000, which for 39.7 years would amount to $238,200. The percent value of that sum at a discount rate of 4½% would be $110,100 (App. 532, 533). Groves testified further as to the possibility that the plaintiff might advance through the ranks to a tool pusher, as had been done by Mr. Haley, Menard's tool pusher. Groves selected 4½% as a discount rate and estimated "that the man would have to get at least 2% per year, on the average, increase to maintain the same buying power that he

has to-day." (App. 537.) Groves then estimated that the present value of the plaintiff's total loss of earning capacity would be $312,954 (App. 539).

In addition to damage for loss of earning capacity, the jury could have found Menard entitled to recover damages for having been rendered impotent, as well as for physical pain, mental anguish, and humiliation. Recovery vel non for each of such items of damage is dependent upon the credibility to be accorded Menard's testimony. Such credibility was primarily for the jury's determination, subject to constitutionally limited review first by the trial judge and then, on appeal, by this Court. We agree with the implicit holding of the trial judge that the jury was not swayed by sympathy, passion, or prejudice when it estimated Menard's total damages at $250,000, and further found that Menard himself was guilty of negligence which contributed 25% to his injuries. Giving due weight to the verdict of the jury and to the rulings of the trial judge, we cannot, under the applicable rules of review, hold the jury's verdict excessive.

Finding no reversible error in the record, the judgment is

AFFIRMED.

GEE, Circuit Judge (concurring):

The opinion of the court implicitly and, I think, correctly decides that permitting this jury to consider future inflation as a factor in calculating damages was not plain error, necessitating a reversal despite the absence of an objection. That it would have been reversible error had an objection been made is settled in this circuit by *Johnson v. Penrod Drilling Co.,* 510 F.2d 234 (5th Cir. 1975) (en banc). But none was, the opinion is correct both here and otherwise, and I concur in it.