Jose Hector MUNOZ et al., Plaintiffs-Appellants,

v.

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA et al., Defendants-Appellees.

No. 75–2538.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1977.

206

Luis M. Segura, Jesus Cavazos, San Antonio, Tex., for plaintiffs-appellants.

Warren N. Weir, San Antonio, Tex., for Local 407.

John Scarzafava, Maury Maverick, San Antonio, Tex., for Intern'l Alliance, etc.

Harold P. Spivak, New York City, for defendants-appellees.

Before GODBOLD, TJOFLAT, and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge.

This is a confused and a confusing record. The initial confusion this case engenders is the unfortunate result of inadequately prepared attorneys for the parties and a district court judge, sitting by designation, who imprudently allowed them to construct this record haphazardly. After careful review of the record, our own understanding of the case requires that we affirm the summary judgment. Fed.R.Civ.P. 56.

### THE FACTS

Plaintiffs-appellants, Jose Hector Munoz and Roberto O. Villarreal, first filed suit against the defendants-appellees, International Alliance of Theatrical Stage Employees and Moving Picture Machine Opera-

tors of the United States and Canada, Union Local No. 407 ("Local No. 407") and the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada ("International"), on September 16, 1971. Plaintiffs' first attorney displayed such· an inordinate lack of cooperation and good-faith during pretrial procedures that their complaint was dismissed without prejudice to their right to refile the suit within thirty days with a different attorney.[1] Plaintiffs did so and the present case followed.

Munoz and Villarreal are self-styled Mexican-Americans who alleged that the union through its International and Local No. 407 discriminated against them because of their national origin. The refiled complaint set out a chronology of the alleged discrimination.

Munoz first applied for membership in the union in January of 1970. In May of 1970 he was asked to take a written examination, though he was told that it was not necessary for the acceptance or the rejection of his application. Munoz declined to take the examination because he did not understand English very well. Later, he was informed that he had not been elected to the membership of Local No. 407. In December of 1970 Munoz applied for membership again. In response to this second

---

1. In its order of dismissal the district court observed: "[t]his case is illustrative of how *not* to participate in pretrial procedures." We might add that the case on review is illustrative of how *not* to litigate or conduct a summary judgment proceeding in either the district court or here. Federal Rule of Civil Procedure 56 contemplates an orderly scheme within which to determine whether summary judgment is proper. *See generally Wright and Miller, Federal Practice and Procedure: Civil* §§ 2711–2742. In the most part, admissibility of evidence on a motion for summary judgment is subject to the general rules relating to form and admissibility at trial. *Roucher v. Traders & Gen. Ins. Co.,* 235 F.2d 423, 424 (5th Cir. 1956). *See also United States v. United States Gypsum Co.,* 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89 (1950); *Olympic Ins. Co. v. H. D. Harrison, Inc.,* 418 F.2d 669, 670 (5th Cir. 1969). In disposing of motions for summary judgment the trial court may consider pleadings, affida-

vits, depositions, motions, answers to interrogatories, stipulations and any other material properly before it. The movant prevails if it is clearly shown that there is no genuine issue as to any material fact in the case and the movant is entitled to a judgment in his favor as a matter of law. *See generally, Brunswick Corp. v. Vineberg,* 370 F.2d 605 (5th Cir. 1967); *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962). The unorthodox practices followed before the district court and on this appeal hardly resemble proper procedure and make review that much more difficult. Chief Judge Hutcheson's observation, made reviewing a summary judgment, is appropriate here:

"· . . in the conduct of trials, as in other endeavors, it is quite often true that the longest way around is the shortest way through." *Gray Tool Co. v. Humble Oil & Refining Co.,* 186 F.2d 365 (5th Cir.), *cert. denied,* 341 U.S. 934, 71 S.Ct. 854, 95 L.Ed. 1363 (1951).

application, some members of Local No. 407 observed Munoz at his work as a projectionist. After being notified of another written examination, Munoz appeared at the scheduled time and place. He refused to take the examination in English, offering instead to take the examination in Spanish. The administrators of the examination refused to give the examination in Spanish. In January of 1971 the membership of the Local No. 407 voted to reject his application. Unable to secure a third official application form, Munoz somehow obtained a copy of the form and submitted the copy to the Local No. 407 in May of 1971. No final action had been taken on this third application as of the date the complaint was filed. Although the complaint stated that Munoz was told the examination was not a condition precedent to processing his application and was further told that even passing the examination did not guarantee membership, he alleged that the "examinations [sic] required of him as a condition of membership into the said union, is discriminatory as to him because it is administered in only the English language, and the speaking, reading and writing [of] the English language is not a valid requirement for membership in the said union, nor for any jobs to which the said union may send the Plaintiff." [2]

The complaint alleged that Villarreal also made three applications for membership in the union. He first applied for membership in January of 1970. He too was offered a written examination and, like Munoz, was assured that it would not be solely determinative of his application. Apparently, he did not take the offered examination. After he learned of the rejection of his first application, Villarreal filed a second application in November of 1970. In response to this application some members of Local No. 407 observed him at work as a projectionist. Villarreal received notice of an examination, scheduled in November of 1970, while he was out of town. He alleged that he returned the day after the examination but the defendants did not offer to examine him then. His application was rejected. His third application was filed in May of 1971 on an unofficial form that he somehow obtained after having been told that no official forms were available. Villarreal claimed that no examination had been offered to him since he had filed his third application, which was pending when the complaint was filed.

Plaintiffs invoked the Civil Rights Acts of 1870 and 1964. 42 U.S.C.A. §§ 1981, 2000e, *et seq.* In their prayer for relief they requested: (1) a permanent injunction enjoining the defendants from continuing to maintain practices that discriminate against them because of their national origin regarding equal hiring opportunities and membership opportunities; (2) an order requiring the defendants to take the affirmative action necessary to correct past

2. Internal inconsistencies abound in the record on appeal. For example, according to the complaint Munoz was informed of the June 1970 rejection in May 1970, one month before it happened. Also according to the complaint, the Equal Employment Opportunity Commission advised Villarreal that he could sue in a letter dated November 30, 1971, after the complaint was filed on September 16, 1971. Though counsel for plaintiffs could not explain this discrepancy, the record on appeal suggests that during December of 1971 Villarreal successfully moved to intervene in the law suit that was dismissed due to plaintiffs' first counsel's pretrial recalcitrance. Because of the narrow focus of our review on this appeal, we need not reconcile the inconsistencies within and among the various filings and transcripts. We do note, for plaintiffs' attorney's future reference, that this court is not the "United States District Court of Appeals for the Fifth Circuit" as titled in the Notice of Appeal. We also make explicit our assumption that when he signed the Motion to Dismiss or for Summary Judgment as "Attorney for Plaintiff" that the attorney for Local No. 407 filed on behalf of his client, a defendant in the instant case. Throughout the procedural history of this case counsel have been ill-prepared, attempting to "shoot from the hip." Plaintiffs' counsel was not able to clarify the facts and issues of this case at the hearing before the district court or at oral argument before this court. Counsel for the International has joined in the unprofessional pettifogging that has characterized this case and filed a brief in this court which is nothing more than a series of "one-liners." He himself apologized at oral argument before this court for this case being in "shambles." This kind of cowboy adversariness ill-serves the interests of the litigants and the courts which endeavor to solve real conflicts.

discriminating practices; (3) a declaratory judgment that the challenged practices violate the Civil Rights Acts of 1870 and 1964; (4) damages for all income lost as a result of the defendants' refusal to allow them membership as well as rights of seniority as of the first day they applied for membership; and (5) such other relief that would appear equitable and just. *See* 28 U.S.C.A. §§ 1343(4), 2201, 2202; 42 U.S.C.A. §§ 1981, 2000e–5(f).

### THE SUMMARY JUDGMENT

■ The difficulty of coping with the confusion of this record was somewhat exacerbated by counsels' misapprehension of the proper scope of authority of the district court vis-a-vis this Court regarding the summary judgment procedure. Plaintiffs and defendants have ignored the decisive division of authority between the *reviewed* court and the *reviewing* court. The decision whether to grant a summary judgment is for the district court alone in our three-tiered federal court system. We are merely authorized to review the propriety of the grant on the basis of the matters of record at the time the summary judgment was entered.

■ Plaintiffs and defendants, attempting to buttress a poorly constructed record, have appended what they aptly term "exhibits" to their briefs on this appeal. These "exhibits", for the most part, were not properly before the district court when the motion for summary judgment came on for hearing and will not be considered here. Oral argument of counsel which, despite our repeated warnings, strayed from what was actually before the district court when the summary judgment was entered must likewise not be considered here. The hearing on this motion for summary judgment was very much a procedural circus. The technique of the attorneys for plaintiffs and defendants evinced a disconcerting lack of regard for procedure, federal civil or any other. Both sides referred to and read from documents not properly before the court. The attorneys pulled several such rabbits out of their hats during their argu-

ments. While this sideshow may have mesmerized the district court judge who allowed it and the participating attorneys who failed to object, we are, at most, limited to reviewing only those rabbits that were before the district court. Materials not presented to the district court for consideration of a motion for summary judgment are never properly before the reviewing court on appeal from the judgment granting the motion. *Auto Drive-Away Co. v. ICC,* 360 F.2d 446 (5th Cir. 1966); *Marion County Cooperative Ass'n v. Carnation Co.,* 214 F.2d 557 (8th Cir. 1954). *See Smith v. Olin Chemical Corp.,* 555 F.2d 1283 (5th Cir. 1977).

Because the briefs are filled with improper distractions, we must carefully examine the record, first to determine what was actually before the district court when the summary judgment was entered and second, to decide if the information on the record supports the judgment.

Defendant Local No. 407 filed a motion for summary judgment alleging three grounds: (1) Munoz and Villarreal had become part owners and managers of a theater in San Antonio, Texas; (2) Munoz was the owner or manager of a theater in Eagle Pass, Texas; and (3) Munoz was a resident of Eagle Pass, Texas according to a residency oath he had taken to run for public office and was therefore ineligible for membership in Local No. 407 in San Antonio, Texas since Eagle Pass was within the geographical jurisdiction of Local No. 678 in Laredo, Texas. Local No. 407 based its motion on cryptic citations to the International's constitution and decisions of the National Labor Relations Board. The International joined in this motion. In their motion, Local No. 407 and the International did not provide anything beyond these bare allegations. Plaintiffs opposed this motion and summarily disputed defendants' factual allegations noting that the motion was not accompanied by either affidavits or copies of the applicable sections of the constitution. Plaintiffs summarily denied the existence of any provisions in the International's constitution that precluded plaintiffs' mem-

bership in Local No. 407 or the International. The district court entered an order requiring the defendants to file copies of the applicable sections of the International's constitution and rulings of the NLRB referred to in their motion. In response, the International filed a copy of Article 21, section 15 of its constitution.[3] Local No. 407, in response to the district court's order, quoted from the Taft-Hartley Act which makes employer interference with the administration of a labor organization an unfair trade practice. 29 U.S.C.A. § 158(a)(2). Local No. 407 also cited a few related NLRB decisions construing this provision to forbid any and all managerial participation in union elections.

The motion for summary judgment came on for hearing before a different district judge, sitting by designation. The transcript of the hearing discloses the following.

Local No. 407 had filed a motion to reopen discovery "for the purpose of providing factual basis for support of the motion to dismiss or for summary judgment." Instead of acting on this motion, the district judge and attorneys continued on with the hearing. After having had the opportunity to consult with his clients, plaintiffs' counsel stipulated that Munoz and Villarreal owned a 2% interest in a theater and Munoz owned another theater in Eagle Pass, Texas. The district judge's attention was still focused on the residency argument in the motion for summary judgment.[4] Plaintiffs' counsel again protested that the defendants did not "provide information either in the constitution or anywhere else to the effect that residency was a requirement."[5] The counsel for Local No. 407 acknowledged that the residency requirement was not then a matter of record but assured the court that, if given time, he could establish it. Local No. 407 counsel also maintained that he could show that Munoz was a resident of Eagle Pass, Texas which placed him beyond the geographical jurisdiction of Local No. 407 and within the sole jurisdiction of Laredo, Texas Local No. 678. Realizing that he could not "get all the factual situation together," the district judge recessed the hearing at that point.

3. Article 21, section 15 provides:
 Section 15. Members Becoming Managers Any member of this Alliance who accepts a position as manager in any place of amusement shall not be allowed voice or vote in any local union while holding such position; but the local union of which he is a member may, at its discretion, permit him to retain his membership therein.

4. Plaintiffs' counsel later sought to withdraw the stipulation that Munoz and Villarreal owned a 2% interest in a theater. The district judge seemed to allow this withdrawal in that he made no comment on it and did not depend on it in his order granting the summary judgment. On its face, Article 21, section 15 of the International's constitution applies only to someone already a member who acquires an ownership or managerial interest in a place of amusement. Also, it contemplates an automatic ban on voting but leaves membership eligibility up to the local. See note 3, supra. Counsel for the International attempted to argue that section 15 traditionally had been applied to new applicants as well. The district judge suggested that determining the traditional application policy was a question of fact and counsel seemed to agree. Plaintiffs' counsel improperly, though without objection, listed some members who he alleged also owned interests in theatres. He urged that ownership went "both ways" and asked that the court examine the

facts in dispute. Thus, there seemed to be a factual issue whether ownership automatically excluded new applicants. The district judge seemed to be of the opinion that section 15, the basis for the original motion for summary judgment regarding both plaintiffs, only applied to someone already a member of a local. In their brief, plaintiffs recognized that "the court denied the motion on the managerial grounds" and that "only . . . the colloquy of court and counsel as it pertain[ed] to residency" is determinative of this appeal. Since we review the correctness of the summary judgment that was entered and not extraneous grounds unsuccessfully argued, we need not concern ourselves with the ownership argument. See *Booth v. State Farm Mut. Auto. Ins. Co.,* 138 F.2d 844 (4th Cir. 1943), *cert. denied,* 321 U.S. 783, 64 S.Ct. 637, 88 L.Ed. 1075 (1944).

5. Plaintiffs' counsel repeated his objection: "Counsel did not put forth any evidence to establish that eligibility for membership [residency] is a residency [eligibility] requirement." This objection became all the more significant when the hearing was continued and plaintiffs' counsel stood silent, failed to object and made legal arguments based on the various constitutions. It indicates that he was well aware of what was properly before the court and what was not.

When the hearing was resumed, the residency requirement was explored further. Counsel for Local No. 407 admitted into evidence, without objection, an official copy of a "Request to Place Name on City Officer Election Ballot" executed under oath by Munoz. This form indicated that Munoz was a resident of Eagle Pass, Texas in February of 1974, the date of execution, and had resided there at least six months before the election scheduled for April of 1974. Plaintiffs' counsel stipulated that Munoz had owned and managed a theater in Eagle Pass, Texas for an indefinite period of time.

At this point the procedural legerdemain began. Without even attempting properly to place them before the court, counsel for the Local No. 407 referred to and read from copies of the International's constitution and the charter of Local No. 407. He explained, without objection, that section 9 of the 1972 version of the International's constitution, then in effect, provided that the geographical jurisdiction of each local extended in all directions halfway to the nearest affiliate, unless the local charter provided otherwise. He urged, again without ob-

jection, that the Local No. 407's charter did not provide otherwise and that Eagle Pass, Texas was within the geographical jurisdiction of Laredo, Texas Local No. 678 and not Local No. 407. He also paraphrased, still without objection, Article 21 of the 1972 version of the International's constitution, then in effect. He explained that Article 21 further required an eighteen month period of residency within the jurisdiction of the local union to which an application was made.[6]

Plaintiffs' counsel, instead of objecting to this procedure, performed some legerdemain of his own. He did not question the propriety of the court's consideration of the 1972 version of the International's constitution. Instead, he pointed out that the alleged discriminatory rejections of applications occurred in 1970 and 1971, before the 1972 version of the International's constitution was in effect. Plaintiffs' counsel then paraphrased, without objection, Article 2, section 1 of the constitution of the Local No. 407 allegedly in effect during 1970 and 1971. He maintained that it only provided for an eighteen month operating period under the jurisdiction of Local No. 407.[7] This

---

6. "We would further point out to the Court in that respect that Section 9 entitled Jurisdiction of Charters under the Constitution and By-laws of the International, effective August 4, 1972 reads in part, 'unless otherwise provided by the Charter issued by the Alliance to a local union, we have produced the original Charter here which has no exceptions to it, 'its geographical jurisdiction shall include the territory extended in any direction half-way to the nearest affiliated local union of the Alliance.'

In this particular case our Charter provides, which was tendered to the Local by the International in 1915 in which 8 out of seventeen of the original Charter members were Mexican-Americans, that the Charter is a plain manila Charter. I think the Court could take judicial notice of the fact that the cities of San Antonio, south to Laredo and west over to Eagle Pass comprise what I think is called an equilateral triangle almost, it being 150 miles from San Antonio west to Eagle Pass, south to Laredo 150 miles and approximately a 160 between the cities Eagle Pass and Laredo, Texas. That being the case it is our position that Eagle Pass and all the residents there come in the jurisdiction under the International of Laredo not the San Antonio local.

I would also indicate to the Court that Article 21 of the same Constitution which I have just cited, being the International Constitution in effect at this particular time, provides that any person applying for membership in this Alliance must be good moral character and reputation and must have been a resident for at least 18 months immediately preceding his application within the jurisdiction of the affiliated local union to which he tenders his application. THE COURT: All right."

7. Furthermore, Counsel has not taken into consideration the fact that we're dealing with possible back pay since this charge was filed back in 1971, I believe, because of discrimination in 1970. I believe there was an application submitted to the local and the International by both plaintiffs on January of 1970, May of 1970 and January of 1971 at which time, Your Honor, there was *another Constitution* and By-law in effect before the local, a copy of which I have here and which reads assuming arguendo that the local is absolutely autonomous it says Article 2, Membership, Section 1, any operator of legal age engaged in gainful occupation who has worked at operating for 18 months under the jurisdiction of this Local and who can be

seems to be consistent and merely an additional requirement of Local No. 407.

Responding, counsel for Local No. 407 referred to a copy of the International's constitution which was in effect from July 24, 1970 to August 4, 1972, when the version in force at the time of the motion and previously paraphrased [8] went into effect. Once again, plaintiffs' counsel stood silent and made no objection. He thus allowed the district court to consider the residency requirement contained in both of the International's constitutions; in 1970 when the plaintiffs' applications were made and in 1975 (1972 version) when the motion for summary judgment was entered. He offered nothing in rebuttal.

Then attention turned to Villarreal. Counsel for Local No. 407 mentioned prior stipulations which had been made since the beginning of the first suit. Plaintiffs' counsel renewed these stipulations: Villarreal had been and still was a member of the International and the Laredo, Texas Local No. 678. From these stipulated facts counsel for Local No. 407 argued that Villarreal had been and was still a resident within the geographical jurisdiction of the Laredo, Texas Local No. 678. He maintained that since the residency requirement was in effect at the time the plaintiffs' applications were made and at the time the motion for summary judgment was heard, Villarreal could not properly be admitted to Local No. 407.[9] Counsel for Local Number 407 argued that both Munoz and Villarreal were ineligible for membership in Local No. 407 because of the residency requirement. Plaintiffs' counsel stood silent. He made

no evidentiary objection. He offered neither proof nor even argument to the contrary.

Defendants' motion for summary judgment was granted as to both Munoz and Villarreal "limited only to the issue of the disqualification because of residency and therefore the action ha[d] become moot." [10] The Order Granting Summary Judgment was entered solely and specifically because the district judge found that Munoz and Villarreal did not satisfy the residency requirement of the International's constitutions of 1970 and 1972, when they first applied and when the judgment was entered. The court based its holding on two findings of fact. First, the court found that Villarreal was a member of Laredo, Texas Local No. 678 and therefore resided beyond the geographical jurisdiction of Local No. 407 in San Antonio, Texas. Second, the court found that Munoz, by virtue of his own declaration under oath as a candidate for local office, was a resident of Eagle Pass, Texas and therefore resided beyond the geographical jurisdiction of Local No. 407 in San Antonio, Texas since Eagle Pass, Texas was within the geographical jurisdiction of Laredo, Texas Local No. 678.

Given this painstaking account of the district court proceedings, our disposition of plaintiffs' challenge to the summary judgment is inevitable.

This court has previously held that a summary judgment dismissing the whole main case cannot be sustained merely by showing that the relief prayed for was not available. Rather, there must have been a showing

---

vouched for by three regular members thereof who are in good standing is eligible to become a regular member of this Union by making proper application and complying with the requirements of this Constitution. That was the *Constitution and By-Law of the Local* at the time this alleged discrimination took place, Your Honor . . . . (emphasis supplied)
Later plaintiffs' counsel, referring to what he described as an undated constitution, read some names of members of Local No. 407 whose addresses were outside of San Antonio, Texas. His reasoning here is opaque; and, he attacked the ownership

argument with emphasis, never really rebutting in any meaningful way the residency argument.

8. *See* note 6, *supra.*

9. Some brief mention was made of transfer provisions applicable to Villarreal but the matter was not pursued.

10. Neither at that point nor during the remainder of the hearing did plaintiffs' counsel challenge in any way the inclusion of Villarreal in the grant of the motion for summary judgment. Such a challenge here comes too late.

that there was no genuine issue of fact on which any kind or type of relief, complete, final, contingent or interim, could be granted. *Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F.2d 317 (5th Cir. 1964). Such is the case here. The district court found, and the record supports its findings, that at all relevant times the International's constitution provided for a residency requirement that plaintiffs failed to satisfy. While the rules do not require findings of fact and conclusions of law in decisions of motions for summary judgment, such findings, as those before us in this case, are permissible and quite helpful to the reviewing court. Here the Order Granting Summary Judgment is clear and illuminates the relevant facts and controlling union constitutional provisions. *See Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210 (5th Cir. 1976).

In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) the Supreme Court specifically agreed with the Rules Advisory Committee concerning the basic procedure of Federal Rule of Civil Procedure 56. As in the case before us, the district court in *Adickes* had granted a summary judgment. In response to the nonmovant's argument for reversal on appeal, the movant maintained that the nonmovant had failed properly to contest the original motion. The Court first noted that it was the movant's burden "to show initially the absence of a genuine issue concerning any material fact." The Court held that the movant in *Adickes* had failed to meet this threshold burden. Had the burden been carried, the Court observed in *dicta* that "[r]ule 56(e) would then have required [the nonmovant] to have done more than simply rely on the contrary allegation in her complaint." *Id.* at 159–61, 90 S.Ct. at 1610. *See also First National Bank v. Cities Service Co.*, 391 U.S. 253 (1968). This reasoning controls the instant case. In *Sweet v. Childs*, 507 F.2d 675, 679 (5th Cir. 1975) this court observed:

> The Fifth Circuit has consistently followed the *Adickes* analysis of Rule 56(e), that once a movant carries his burden of showing no genuine issue of material

fact, it is the non-movant's burden to rebut this showing with his own "affidavit or otherwise." If he fails to do so, the summary judgment, if otherwise appropriate, is affirmed. *See, e. g., E. C. Ernst, Inc. v. General Motors Corp.*, 5 Cir., 1973, 482 F.2d 1047, 1049; *Garcia v. American Marine Corp.*, 5 Cir., 1970, 432 F.2d 6, 7–8; *Lovable Co. v. Honeywell, Inc.*, 5 Cir., 1970, 431 F.2d 668, 670–671.

Generally, the admissibility of evidence on a motion for summary judgment is subject to the usual rules relating to form and admissibility of evidence. *Roucher v. Traders & Gen. Ins. Co.*, supra. *See United States v. United States Gypsum Co.*, supra. This is so because "[s]ummary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth." *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940). In the case on appeal, much of the materials considered by the district court may not have been properly admissible, but the summary judgment is nevertheless sustained by the record.

 The district court entered the summary judgment on the basis of the residency of the two plaintiffs and the residency requirement of the defendant International. Villarreal's residency was established, indirectly, by plaintiffs' counsel's stipulation that he was a member of the International and the Laredo, Texas Local No. 678. In the context of the International's constitutional requirement that members of locals reside within the local's geographical jurisdiction, Villarreal was ineligible for membership in Local No. 407, located in Laredo, Texas. Stipulations are a proper evidentiary basis for a summary judgment. *E. g. Menard v. Penrod Drilling Co.*, 538 F.2d 1084 (5th Cir. 1976); *Locals No. 1470, No. 1469 and No. 1512 of Internatl. Longshoremen's Ass'n. v. Southern Pac. Co.*, 131 F.2d 605 (5th Cir. 1942). *See Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). Munoz' residency was established by proper

affidavit. Certainly, affidavits are an ideal basis for a summary judgment. Fed.R. Civ.P. 56(e).

The residency requirement contained in the International's constitution was established only by the attorneys' reading, referring and paraphrasing.[11] Statements of counsel made orally under certain circumstances may properly be considered by a court deciding on a motion for summary judgment. *Hiern v. St. Paul–Mercury Indemnity Co.,* 262 F.2d 526, 529 n. 2 (5th Cir. 1969), *citing, Creel v. Lone Star Defense Corp.,* 171 F.2d 964, 967 (5th Cir. 1949), *rev'd on other grounds,* 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950) *and Whitaker v. Coleman, supra. Cf. United States v. Dooley,* 424 F.2d 1067 (5th Cir. 1970). Uncontested statements of fact may sometimes be treated as stipulations. *Cook v. Ochsner Foundation Hosp.,* 61 F.R.D. 354, 359 (E.D.La.1972). However, even assuming that the constitutions were improperly before the district court, the summary judgment based on them must be sustained. When defense counsel read from, referred to, and paraphrased the critical provisions, plaintiffs' counsel stood silent. He did not object. He did not challenge the *accuracy of the* portions depended on. He offered no significant rebuttal. Instead, he himself referred to other provisions also not properly before the court. Inadmissible material that is considered by a district court without challenge may support a summary judgment. Here there was no timely objection and it is deemed waived. *Auto Drive-Away Co., Inc. v. ICC, supra; Lawson v. American Motorists Ins. Co.,* 217 F.2d 724, 726 (5th Cir. 1954). *See also, Davis v. Howard,* 561 F.2d 565 (5th Cir. 1977); *United States v. Dibble,* 429 F.2d 598, 603 (9th Cir. 1970) (concurring opinion); *Cinocca v. Baxter Labs, Inc.,* 400 F.Supp. 527, 530 (E.D.Okla. 1975); *Warner v. Replinger,* 397 F.Supp.

350, 359, n. 7 (D.R.I.1975); *Monks v. Hurley,* 45 F.Supp. 724, 727 (D.Mass.1942); *JNO. T. McCoy, Inc. v. Schuster,* 44 F.Supp. 499 (S.D.N.Y.1942).

Once the defendants-movants had presented these matters, the initial burden of showing that there was no genuine issue of material fact was met. It was incumbent on plaintiffs to come forward and rebut the showing:

> But if, on the other hand, there is, by a presentation of factual evidentiary details having the substantial characteristics of receivable evidence as compared with conclusions, a conviction showing that no real genuine controversy on the decisive fact exists, a mere formal denial is but a pretended one, and is insufficient. In that situation the respondent must come forward with facts of his own. *Bruce Construction Corp. v. United States, for Use of Westinghouse Electric Supply Co.,* 5 Cir., 1957, 242 F.2d 873. *Bros, Inc. v. W. E. Grace Manufacturing Co.,* 261 F.2d 428, 433 (5th Cir. 1968).

*See also, Oglesby v. Transport Co., Inc.,* 543 F.2d 1111 (5th Cir. 1976); *Golden Oil Co., Inc. v. Exxon Co.,* 543 F.2d 548 (5th Cir. 1976).

Here, the plaintiffs never came forward with any significant rebuttal. They made no showing that there was any genuine issue of fact. After careful review of the record, the summary judgment is

AFFIRMED.[12]

GODBOLD, Circuit Judge, concurring: I concur in the result only.

---

11. Although copies of the various constitutions were never admitted into evidence, attached to affidavits or stipulated into evidence, there is some indication in the record that the district judge himself examined them. At one point he remarked that he had not "gone through the *whole* constitution . . ." (emphasis supplied). In any event, no copies were ever made

part of the record. We depend exclusively on the record on appeal for our knowledge of the contents of the various constitutions.

12. Given our decision we deem it unnecessary to reach the various motions pending before this court.