Harold L. GROGAN, et al., Appellants,

v.

**GENERAL MAINTENANCE SERVICE COMPANY, et al.**

**Harold L. GROGAN, et al.**

v.

**GENERAL MAINTENANCE SERVICE COMPANY, Quadrangle Development Corporation, et al., Appellants.**

Nos. 84–5233, 84–5424.

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1985.

Decided May 24, 1985.

Peter C. DePaolis, Landover, Md., with whom Joseph H. Koonz, Jr., Washington, D.C., Carolyn McKenney and Roger C. Johnson, Landover, Md., were on brief, for appellants Harold L. Grogan, et al. in No. 84–5233.

Edward A. Sheridan, for appellants Quadrangle Development Corp. in No. 84–5424.

D'Ana E. Johnson, Washington, D.C., with whom James C. Gregg and James F. Bromley, Washington, D.C., were on brief, for appellee in Nos. 84–5233 and 84–5424.

Before WALD, MIKVA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge.

In this consolidated case, Harold Grogan and his wife, Crawford Grogan, brought a tort action for damages arising out of Harold's slip and fall accident in a downtown Washington, D.C. office building. The defendants were General Maintenance Service Company (General Maintenance) and appellants Quadrangle Development Corporation, Square 119 Associates, and Square Realty, Inc. (collectively referred to as "Quadrangle").[1] Quadrangle, the owner and manager of the building, filed a cross-claim against General Maintenance, which as its name suggests was responsible for cleaning the building. The cross-claim sought indemnity or contribution for all sums that might be awarded to the plaintiffs against Quadrangle.

Prior to trial, the Grogans settled their claim against Quadrangle, leaving General Maintenance as the solitary defendant. The case was tried to a jury, which returned a general verdict in favor of General Maintenance. The Grogans thereupon moved for judgment notwithstanding the verdict or, in the alternative, for a new trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. At the same time, Quadrangle moved for a hearing on its cross-claim. The District Court denied both motions in separate orders, from which the Grogans and Quadrangle now appeal. Finding the Grogans' arguments without merit, we affirm the District Court's denial of the motion for judgment n.o.v. or new trial. We find, however, that Quadrangle is entitled to an opportunity to litigate its cross-claim against General Maintenance, to the extent of Quadrangle's contract-based claim against its mainte-

---

1. Quadrangle Development Corporation manages the office building in which Mr. Grogan's accident occurred. Square 119 Associates, a partnership, owns both the office building and Quadrangle Development Corporation. The record does not reveal the relationship of Square Realty, Inc. to Quadrangle Development Corporation or to Square 119 Associates. Nonetheless, the latter three firms have jointly brought a cross-claim against General Maintenance, and are represented by the same counsel on appeal.

nance contractor. Accordingly, we reverse in part and remand for consideration of that claim.

## I

Harold Grogan worked as a sales representative for the Xerox Corporation. Although his office was located in the Rosslyn area of Arlington, Virginia, Mr. Grogan's duties brought him not infrequently to downtown Washington. It was there that the unhappy events which gave rise to this litigation occurred. On September 16, 1981, Mr. Grogan was working at a Xerox demonstration facility located on the mezzanine floor of 1919 Pennsylvania Avenue, N.W. After completing a demonstration of Xerox products between 5:00 and 5:15 p.m., Mr. Grogan went to use the men's restroom. There he fell to the floor, seriously injuring his back and head. According to the Grogans' complaint, Mr. Grogan slipped on a pool of water on the restroom floor. The complaint further alleged that the floor became wet and slippery as a result of General Maintenance's and Quadrangle's failure to maintain the restroom in a safe condition and to inspect the restrooms adequately to ensure that they were properly maintained.

Because of the nature of the Grogans' appeal, challenging as they do the lack of evidence to support the jury's verdict, it is necessary to recount briefly the testimony adduced at trial. Mr. Grogan testified that he slipped and fell after taking two steps into the restroom. When he regained consciousness, he noticed that his clothes were wet; in a similar vein, two witnesses, Mr. Park and Mr. Sturman,[2] testified that they

found Mr. Grogan lying in a wet area of the floor. Several mezzanine floor tenants testified that they had frequently observed that water would accumulate on the sink counter and spill onto the floor in front of the sink.[3] The witnesses did not, however, agree on the cause of the water accumulation. Two tenants, Mr. Cox and Mr. Baghdassarian, testified that the faucet fixture leaked. On the other hand, Mr. Sturman and Mr. Park testified that visitors to the restroom would splash water onto the counter as they washed their hands. Indeed, Mr. Sturman testified that on some days more than forty Xerox employees and clients visited the demonstration facility and might have occasion to use the restroom.[4] Mr. Sturman also stated that on the day in question the floor's wetness was obvious and apparent to anyone as they entered the restroom. None of the tenants who testified recalled complaining about the problem of wet floors to either General Maintenance or Quadrangle. Similarly, neither General Maintenance's building work crew supervisor nor Quadrangle's assistant building manager recalled receiving any complaints with respect to the restroom.

Mr. Grogan recalled that he had worked at the Pennsylvania Avenue building about two or three times a month over the six months prior to his accident. He testified that on the day of his fall, his demonstration ran late, and he was due at a training session scheduled for 5:30 p.m. at his Rosslyn home office. During cross-examination, Mr. Grogan stated that he did not look down at the floor as he entered the rest-

---

**2.** Mr. Park was the proprietor of a shop in the building; Mr. Sturman was the manager of the Xerox demonstration facility.

**3.** Mr. Sturman described the problem as a wet floor; however, he further indicated that it was inaccurate to characterize the water accumulation as a puddle because that term suggested to him a more substantial accumulation than was present.

It was by no means undisputed from the testimony that the restroom floor was chronically wet. General Maintenance's building work crew supervisor and Quadrangle's assistant building manager testified that during their periodic inspections of the building's restrooms, they never found any problems in the mezzanine restroom. In addition, a Quadrangle maintenance mechanic, who had made repairs in the restroom two days prior to the accident, did not remember seeing any water on the sink or floor.

**4.** The testimony at trial, however, did not reveal the number of individuals who utilized the facility on the day of Mr. Grogan's fall.

room and conceded that the restroom was fully lit. Trial Transcript, Vol. III at 48.

General Maintenance's cleaning contract with Quadrangle provided that General Maintenance would utilize both a day and night crew to clean the building. Testimony revealed that the day porters' duties included a twice-a-day inspection, stocking and cleaning of the building's restrooms. In addition, General Maintenance's employees were contractually required to report to the building's management the existence of leaky faucets, broken fixtures, or other problems or "unusual happenings" in the building. General Maintenance assumed responsibility "for loss or damage caused by [its] employees, and for the conduct of [its] employees." Quadrangle was responsible for the repair of plumbing fixtures and in accordance with this responsibility, a Quadrangle maintenance mechanic had repaired one of the faucets in the restroom two days before Mr. Grogan's accident.

## II

■ Our inquiry in reviewing the trial court's denial of the Grogans' motion for judgment n.o.v. is narrow.[5] Our task is to determine whether sufficient evidence was presented at trial to allow the jury reasonably to find for the nonmoving party. As this court has stated, "[t]he jury's verdict must stand unless 'the evidence, together with all inferences that can be reasonably drawn therefrom is so one-sided [in favor of the moving party] that reasonable men could not disagree on the verdict.'" *Carter v. Duncan-Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir.) (quoting *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* ——

U.S. ——, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983)).

■ In evaluating the jury's verdict, the court is to consider all the evidence and to do so in the light most favorable to the successful party below. *Carter, supra,* 727 F.2d at 1227. Conflicts in the evidence must be resolved in favor of the prevailing party. *Luck v. Baltimore and Ohio R.R. Co.,* 510 F.2d 663, 664 (D.C.Cir.1975). Furthermore, our task is not to seek to assess, based on a cold record, the credibility of the witnesses nor are we to weigh the evidence, for those are obviously functions reserved for the jury. *Carter, supra,* 727 F.2d at 1227. Our function is limited to verifying "only that fair-minded jurors could reach the verdict rendered." *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1534 (D.C.Cir.1984).

■ Our review of a denial of a motion for new trial is also limited.[6] The disposition of such a motion is a matter entrusted to the sound discretion of the trial court, *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); in consequence, we review the District Court's denial of a motion for new trial only to determine whether that action constituted an abuse of discretion. *Vander Zee v. Karabatsos,* 589 F.2d 723, 728 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979). Our review is particularly narrow where, as here, the trial court denied a motion founded upon the contention that the evidence was insufficient to support the verdict. *U.S. Industries, Inc. v. Blake Constr. Co.,* 671 F.2d 539, 549 (D.C.Cir. 1982). In such situations, the appellate court owes deference both to the trial

---

5. Rule 50(b), Fed.R.Civ.P., provides in part:

Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or

may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

6. Rule 59(a), Fed.R.Civ.P.., provides in part that:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted at law in the courts of the United States.

judge and the jury, *Hobson v. Wilson*, 737 F.2d 1, 58 n. 160 (D.C.Cir.1984), *cert. denied*, —— U.S. ——, ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), since both have had "the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record." *Taylor v. Washington Terminal Co.*, 409 F.2d 145, 148 (D.C.Cir.), *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969).

### III

 Applying these well-settled principles to the record before us, we conclude that sufficient evidence was adduced to permit the jury reasonably to find in favor of General Maintenance. For one thing, the jury had before it evidence from which it could have concluded that Mr. Grogan was contributorily negligent.[7] Two witnesses, as we have seen, testified that the wet condition of the floor was apparent and obvious as they entered the restroom. It was also revealed that the floor was frequently wet; moreover, Mr. Grogan was no stranger to the premises having used the facility about two or three times a month over the preceding six months. Thus, a rational jury could have concluded that Mr. Grogan should have become aware of the problem and should have exercised greater caution when he entered the restroom. Not only that, Mr. Grogan stated on cross-examination that, at the time of the accident, he was late for a meeting at his home office across the Potomac in Rosslyn, a state of affairs from which the jury may have inferred that Mr. Grogan was rushing about and not exercising reasonable care and caution.

In addition, evidence was adduced from which the jury could have found that the wet floor resulted from the negligence not of General Maintenance but of Quadrangle in failing to maintain the restroom's faucets in proper working order. As we previously recounted, witnesses testified to their belief that a leak in the right-hand faucet was the source of water which would collect on the counter and the floor. Moreover, a Quadrangle maintenance mechanic stated that he worked on one of the restroom's faucets two days prior to Mr. Grogan's accident.[8] The jury might reasonably have concluded that Quadrangle's mechanic negligently repaired the faucet or, alternatively, negligently failed to discover the faucet's leak.

Finally, the verdict for General Maintenance could have been based upon a finding by the jury that the floor became wet as a result of periodic, unpredictable heavy use of the restroom. Two witnesses observed that water would splash onto the counter, from where it would spill onto the floor, as visitors used the sink. Furthermore, the jury heard evidence to the effect that on some days very heavy use would be made of the facility. Since General Maintenance's day porters cleaned the restrooms only twice each day, the jury might reasonably have decided that the failure of the day porters to wipe up the water did not constitute negligence. Rather, the jury may have concluded that Quadrangle, as manager and owner, was responsible for addressing the problems created by extraordinary use of the restrooms. In sum, we simply cannot say that the District Court erred in allowing the jury verdict to stand.

### IV

 The second issue is whether the judgment against the Grogans in their action against General Maintenance bars Quadrangle from asserting a cross-claim for indemnity or contribution pursuant to Rule 13(g) of the Federal Rules of Civil

---

7. Contributory negligence is a complete bar to recovery under District of Columbia law. *Elam v. Ethical Prescription Pharmacy, Inc.*, 422 A.2d 1288, 1289 n. 2 (D.C.1980) (quoting *Brown v. Clancy*, 43 A.2d 296, 298 (D.C.1945)).

8. The mechanic testified that he replaced an aerator on one of the faucets because the flow of water had become restricted. In addition, as a part of quarterly maintenance, he checked all the plumbing fixtures in the restrooms to ensure that they were in working order and found no problems.

Procedure.[9] Following the court's entry of judgment on the verdict for General Maintenance, Quadrangle moved for a hearing on its cross-claim. The District Court by order denied the motion, holding that the trial on the merits of the Grogans' damage suit against General Maintenance had determined the precise issue that Quadrangle sought to litigate in its cross-claim. Since the court viewed the cross-claim as being founded upon the allegation that General Maintenance negligently caused Harold's injury, the court dismissed the cross-claim since that allegation had already been litigated and decided.[10] On appeal, Quadrangle contends that the District Court interpreted its cross-claim too narrowly, inasmuch as General Maintenance may be liable under its contract with Quadrangle, quite apart from any liability *vel non* in tort.

Under the generous rules governing federal pleading,[11] we are constrained to agree that Quadrangle's cross-claim cannot be so narrowly construed. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). Under familiar principles, a complaint must be read broadly to determine whether it provides the defendant with fair notice of the claim and presents a claim which would, if proved, entitle the claimant to relief. *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957). "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts," *id.* at 47, 78 S.Ct. at 102, nor plead the legal theories upon which he or she bases the claim. *Hanson v. Hoffmann*, 628 F.2d 42, 53 (D.C.Cir.1980).

In its cross-claim, Quadrangle alleges that "the injuries and damages, if any, sustained by the plaintiff were caused by the sole and/or concurrent actions of the co-defendant General Maintenance"; relief in the form of indemnity or contribution is requested. Although it is terse and general, and scarcely a model of artful pleading, Quadrangle's cross-claim satisfies the generous requirements of the Federal Rules. It alleges facts (*i.e.* that General Maintenance caused the plaintiff's injuries) which, if proved, would entitle Quadrangle to the requested relief.[12] Furthermore, Quadrangle made it clear below that it was seeking to assert a contractual claim in its memorandum of law in support of its motion for a hearing on the cross-claim.[13] In

---

**9.** Rule 13(g), FED.R.CIV.P., provides:

A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

**10.** "[A] district court may *sua sponte* dismiss an action whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" *Anthony v. Marion County General Hospital*, 617 F.2d 1164, 1167 (5th Cir.1980) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

**11.** Rule 8, FED.R.CIV.P., provides in part:

(a) Claims for relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled....

 \* \* \* \* \* \*

(f) Construction of Pleadings. All pleadings shall be so construed as to do substantial justice.

**12.** Both contribution and indemnity are, of course, available as forms of relief under the law of the District of Columbia, *Rose v. Hakim*, 335 F.Supp. 1221, 1231–33 (D.D.C.1971).

**13.** Following the return of the verdict in favor of General Maintenance, which Quadrangle observed came as a surprise to it, Quadrangle promptly moved for a hearing on its cross-claim. At oral argument on this appeal, counsel for General Maintenance urged affirmance of the District Court's denial of the motion in part on the ground that Quadrangle should have moved for a hearing immediately upon the return of the jury's verdict. We find this contention, which was not advanced in General Maintenance's brief, to be without merit.

that memorandum, Quadrangle unambiguously stated that its claim for indemnity was founded upon express contractual provisions.[14]

Having asserted a contractual claim for indemnity, Quadrangle is entitled to an opportunity to litigate that claim. The prior action and the judgment entered therein between the Grogans and General Maintenance did not relate to any contractual liability *vel non* on the part of General Maintenance; that judgment therefore does not bar Quadrangle from litigating its cross-claim to the extent of its contract-based claim.[15]

Accordingly, the judgment of the District Court is

*Affirmed in part; reversed in part and remanded.*

---

**14.** Quadrangle outlined two contract-based claims against General Maintenance in its memorandum of law. First, it contended that General Maintenance breached its contract with Quadrangle in failing to discover, correct, or report the wet floor. Second, Quadrangle asserted that General Maintenance contracted to bear the responsibility for any loss or damage caused by its employees, whether or not its employees were negligent.

**15.** We agree fully with the District Court's determination that the jury's verdict of necessity disposes of Quadrangle's tort-based claim.