**Shirley P. LANGEVINE, Appellee,**

v.

**DISTRICT OF COLUMBIA, et al., Appellants.**

No. 96–7057.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 12, 1996.

Decided Feb. 25, 1997.

Donna M. Murasky, Assistant Corporation Counsel, argued the cause, Washington, DC, for appellants. Charles F.C. Ruff, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Edward E. Schwab, Washington, DC, Assistant Corporation Counsel, were on the briefs.

James C. Duda, Springfield, MA, argued the cause for appellee, with whom Jerry S. Fowler, Jr. and Arthur B. Spitzer, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

Opinion concurring in part and dissenting in part filed by Circuit Judge HENDERSON.

HARRY T. EDWARDS, Chief Judge:

This case arose out of Shirley P. Langevine's arrest for disorderly conduct by two Metropolitan Police Department officers who had stopped Langevine for speeding. Langevine sued the officers and the District of Columbia ("defendants") for common-law false arrest, false imprisonment, and assault and battery, and, under 42 U.S.C. § 1983 (1994), for violation of her Fourth and Fifth Amendment rights. A jury found in favor of Langevine on the false arrest, false imprisonment, and § 1983 claims and awarded her $201,500 in damages. The trial judge did not enter judgment on the verdict, however, and instead granted defendants' motion for judgment as a matter of law.

On the first appeal in this case, the court reversed the grant of judgment as a matter of law in favor of the defendants and "ORDERED that the case be remanded to the District Court for entry of judgment according to the jury verdict except with respect to the § 1983 claim against the District of Columbia, as to which the jury verdict is vacated, and for consideration of such post-judgment motions as the parties may make." *Langevine v. District of Columbia,* No. 93–7124, 1994 WL 609454 (Oct. 24, 1994) (mem.), *reprinted at* Appendix I ("App.") 53.

On remand, defendants moved for a new trial. The trial judge denied the motion as untimely, then reconsidered and granted the motion on the grounds that the verdict was against the weight of the evidence and the damages were excessive. Prior to the new trial, however, the judge's health declined, and the case was reassigned to another District Court judge. The new judge granted Langevine's motion for reconsideration of the new trial decision, vacated the new trial order, and entered judgment in favor of Langev-

ine. Defendants now appeal, arguing that the trial judge's second order granting a new trial was "the law of the case," and, therefore, the District Court judge to whom the case was reassigned had no power to reconsider the new trial order.

The grant of a new trial motion is an interlocutory order that is not subject to the law of the case doctrine. Thus, the District Court judge to whom this case was reassigned had full authority to reconsider the previous new trial ruling. Finding no abuse of discretion in the District Court's ultimate denial of defendants' motion for a new trial, we affirm the District Court's order entering judgment in favor of Langevine.

## I. BACKGROUND

On May 6, 1990, a car driven by appellee Langevine was stopped by Officers Johnson and Kelsey of the Metropolitan Police Department for speeding on a District of Columbia street. While the officers were preparing a traffic ticket, they arrested Langevine for disorderly conduct. Langevine brought this action against the officers and the District of Columbia for common-law false arrest, false imprisonment, and assault and battery, and, pursuant to 42 U.S.C. § 1983, for violation of her rights under the Fourth and Fifth Amendments.

At trial, Langevine's testimony about the events surrounding her arrest was as follows:

On May 6, 1990, Langevine was driving her car south on 13th Street, N.W., in the District of Columbia. Her two daughters, Tracy and Denise, then ages fourteen and sixteen, were with her. She was stopped by Officer John Kelsey and Officer Katherina Johnson near the intersection of 13th Street and Colorado Avenue. Transcript ("Tr.") 5–7, *reprinted in* Appendix II. Officer Johnson had set up a radar unit to catch speeders at this location. Tr. 458–59, 479–80.

Officer Kelsey approached her car and asked for her driver's license and registration, which she gave to him. Tr. 7–8. Langevine asked Officer Kelsey if something was wrong and was told that she had been speeding. She replied, "Where or when?" and was

told, "Right here just now driving your car." She asserted that she could not have been speeding since she had been going with the flow of the traffic. Tr. 8. Kelsey commented on Langevine's accent and asked which island she was from. She replied, "Sir, what does that have to do with the question I asked you? I asked you why did you stop me." Tr. 8. According to Langevine, Officer Kelsey responded that, "I see you have a [expletive] mouth." She replied, "I do not have to put up with your profanity. All I did was ask you a question why did you stop me?" Officer Kelsey then told her that because of her "[expletive] mouth" he was going to give her a ticket. Tr. 8–9.

Officer Kelsey took Langevine's license and registration back to his police car. Langevine remained in her car and, after about ten minutes, "started feeling very uncomfortable, hot, and of course, you know, wondering what's going on." However, she testified that she was "not angry." Tr. 9. Langevine got out of her car and "paced a little bit." She then started walking toward the police car, and was instructed by Officer Kelsey to, "Go sit in your car." She replied, "Sir, I would like to know what is going on. Could you give me an answer? I really do not understand what is going on." Officer Kelsey repeated the instruction to sit in her car. Tr. 9–10. Langevine replied, "Am I in violation of the law?" She was again instructed to go to her car and responded, "Sir, I am seeking clarity. What is going on?" Tr. 10. She stated that she approached the officers less than eight or nine times to ask them what was going on. Tr. 59.

Officer Johnson came over and said, "Can I help you?" Langevine indicated that she had been speaking to Officer Kelsey, to which Officer Johnson responded, "Well, I am the one that will give you a ticket." Langevine then said, "Well, then you can tell me why would you give me a ticket?" Officer Johnson replied that Langevine should go and sit in her car. Tr. 10. Langevine again said, "I am seeking clarity here. I would like to know what is going on." Tr. 10.

At that point, Langevine heard Officer Johnson say, "Let's arrest her." Johnson then told Langevine to lean on the hood of the car. Before she could do so, the two police officers pulled her arms behind her in a painful manner, led her to the police car, and pushed her against the hood of the car in a manner that caused her head to strike it. The impact caused a bruise and broke her glasses but did not break the skin. Langevine was handcuffed, pushed into the back seat of the police car in an awkward manner, and taken to the police station. Tr. 11–12.

Officers Kelsey and Johnson also testified at trial. Although their account was substantially similar to Langevine's, according to the officers, Langevine was loud and belligerent, used obscene language, and disrupted the neighborhood until her arrest. Tr. 409–11, 465.

Langevine's version of the arrest was corroborated by the testimony of two non-party witnesses. First, Langevine's daughter Denise, now a scholarship student at Princeton University, Tr. 73, testified that she was sitting in her mother's car with the windows open throughout the arrest. Denise testified that she did not hear any yelling or profanity prior to her mother's arrest. Tr. 75–77. Second, Carolyn Andrews, who was sitting on the porch of her home at 13th and Madison Streets, N.W., at the time of the arrest, testified that she did not hear any swearing or yelling prior to Langevine's arrest, that she did not believe Langevine was disturbing the neighborhood, and that, as far as she could see, Langevine was not a threat to anyone. Tr. 120–21, 142–43.

Both sides also offered expert testimony on the proper enforcement of disorderly conduct laws. Although the experts disagreed on the significance of the fact that the District of Columbia's rate of disorderly conduct arrests has consistently been two to five times greater than the national average, both experts agreed that, if Langevine's account of her arrest were credited, her arrest was not proper. Tr. 193–94, 345.

On June 17, 1993, at the end of the four-day trial, the jury returned a verdict for Langevine on the false arrest, false imprisonment, and § 1983 claims; it decided in favor of the defendants on the assault and battery

claim and denied punitive damages. App. 38–40, 42–43. However, judgment was not entered on the verdict, and the following day the trial judge, visiting District Judge Henry A. Mentz, Jr., granted the defendants' motion, made at the close of the evidence, for judgment as a matter of law. *Langevine v. District of Columbia,* No. 91–1026 (D.D.C. June 18, 1993) (order), *reprinted at* App. 52. In doing so, Judge Mentz stated his belief that, "[e]ven though the plaintiff denies having used foul language there is substantial evidence that she nevertheless engaged in disorderly conduct. The overwhelming evidence is that while the officers were attempting to process tickets to people who had been stopped earlier the plaintiff repeatedly confronted the officers in a loud aggressive, obstreperous and agitated manner that was inappropriate and disruptive and breached the peace of the neighborhood." App. 47–48. The judge did not explain what evidence supported this conclusion or why the contrary testimony of Langevine, her daughter, and Andrews was not credible.

Langevine appealed the judgment as a matter of law in favor of defendants. The only argument defendants offered in support of the District Court's judgment as a matter of law was that the officers were immune from damages because they acted with an objectively reasonable belief that their conduct was lawful. *Langevine v. District of Columbia,* No. 93–7124, 1994 WL 609454 (D.C.Cir. Oct.24, 1994) (mem.), *reprinted at* App. 56. This court found that, even if defendants believed in good faith that Langevine had engaged in disorderly conduct, that belief was not objectively reasonable. *Id.* Because the District of Columbia was vicariously liable for the full award of damages on the common-law claims, the court vacated the jury's verdict with respect to the § 1983 claim against the District in order to avoid the unnecessary decision of a constitutional issue regarding the District's alleged failure to train its officers in the proper enforcement of the disorderly conduct law. *Id.* at 57. Thus, on October 24, 1994, this court reversed the entry of judgment as a matter of law and "ORDERED that the case be remanded to the District Court for entry of judgment according to the jury verdict except with respect to the § 1983 claim against the District of Columbia, as to which the jury verdict is vacated, and for consideration of such post-judgment motions as the parties may make." *Langevine v. District of Columbia,* No. 93–7124, 1994 WL 609454 (Oct. 24, 1994) (mem.), *reprinted at* App. 53.

On December 21, 1994, defendants filed a motion for a new trial or a remittitur. On April 27, 1995, Judge Mentz denied the motion on the ground that it was not timely filed. *Langevine v. District of Columbia,* No. 91–1026 (D.D.C. Apr. 27, 1995) (order), *reprinted at* App. 58–61. On August 3, 1995, however, Judge Mentz reconsidered his April 27 order and ruled that the new trial motion was timely; he also granted a new trial on all issues in the case on the grounds that the verdict was contrary to the weight of the evidence and the verdict was excessive. *Langevine v. District of Columbia,* No. 91–1026 (D.D.C. Aug. 3, 1995) (order), *reprinted at* App. 63–68.

Prior to the new trial, due to Judge Mentz's poor health, the case was reassigned to District Judge Aubrey E. Robinson, Jr. On February 12, 1996, Judge Robinson granted reconsideration of Judge Mentz's new trial order, vacated the order, and ordered judgment in favor of Langevine. *Langevine v. District of Columbia,* No. 91–1026 (D.D.C. Feb. 9, 1996) (mem.), *reprinted at* App. 86.

## II.  DISCUSSION

The defendants argue that the law of the case doctrine precluded Judge Robinson from reconsidering Judge Mentz's grant of a new trial, *see generally* Brief of the District of Columbia at 10–16, or, stated another way, that Judge Robinson's decision should be reviewed *de novo* because he "performed essentially an appellate court function in reviewing [Judge Mentz's] new trial order for error," Brief of the District of Columbia at 8. In either form, this argument is without merit.

■■■ Judge Mentz's order granting a new trial was an interlocutory order. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 189–90, 66 L.Ed.2d 193

(1980). Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment. *See Schoen v. Washington Post,* 246 F.2d 670, 673 (D.C.Cir.1957) (" '[S]o long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is consonant with equity to do so.' " (quoting *John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 90–91, 42 S.Ct. 196, 199, 66 L.Ed. 475 (1922) (internal quotation marks and emphasis omitted); 18 Charles Alan Wright et al., Federal Practice and Procedure § 4478 (1981). This is true even when a case is reassigned to a new judge. *See In re Agent Orange Prod. Liab. Litig.,* 733 F.2d 10, 13 (2d Cir.1984) ("It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge."); 1B James Wm. Moore et al., Moore's Federal Practice, ¶ 0.404[4.—2] (2d ed.1996) ("[T]ransfer [between judges] should no more freeze prior rulings than it should require their routine reexamination."). Thus, Judge Robinson had full authority to reconsider Judge Mentz's order granting a new trial and to reinstate the jury's verdict.

■ Judge Robinson's ruling, like any ruling on a motion for a new trial, is reviewed for abuse of discretion. *See Hutchinson v. Stuckey,* 952 F.2d 1418, 1420–21 (D.C.Cir. 1992).

> The determination whether to order a new trial is entrusted to the trial court's discretion and may be reviewed only for abuse of that discretion. *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 646 (D.C.Cir.1988) (citing *Grogan v. General Maintenance Serv. Co.,* 763 F.2d 444, 447 (D.C.Cir.1985)). When the district court *denies* a motion for new trial, our scope of review is particularly narrow because the trial court's decision accords with the jury's. *Id.* Where ..., however, the trial court *grants* a motion for new trial, "a more searching inquiry is required," *id.,* because of "the concern that a judge's

nullification of the jury's verdict may encroach on the jury's important fact-finding function," *Vander Zee v. Karabatsos,* 589 F.2d 723, 729 (D.C.Cir.1978) (citing *Taylor v. Washington Terminal Co.,* 409 F.2d 145, 148 (D.C.Cir.1969)), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979). This is particularly true when the motion is granted on the ground that the verdict is against the weight of the evidence. *Id.* When a new trial is ordered on that ground,

> the [trial] judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial.

*Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir.) (en banc), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960), *quoted in McNeal,* 836 F.2d at 646–47. *Hutchinson,* 952 F.2d at 1420–21. The court emphasized that a trial judge's disagreement with the jury on the credibility of witnesses does not justify the granting of a new trial. *Id.* at 1421 ("[W]hen a jury's verdict is supported by sufficient evidence, ... '[t]he trial court's contrary view of the credibility of the witnesses does not justify the granting of a new trial.' " (quoting *Vander Zee,* 589 F.2d at 729)).

In granting defendants' motion for a new trial, Judge Mentz apparently thought that he was required to "weigh the evidence and the credibility of the witnesses." App. 65–66. And in granting the motion for a new trial, Judge Mentz simply indicated that he disagreed with the jury's verdict:

> Although there were conflicting accounts of the events at issue, there was much evidence contradicting the plaintiff's account. The weight of the evidence is that the officers had a reasonable, good faith belief that they had cause to arrest the plaintiff and acted within their lawful authority. This was and remains the opinion

of the court, as expressed in its oral reasons rendered on June 18, 1993, on the defendants' motion for judgment as a matter of law.

App. 66–67.

■ As Judge Robinson found on reconsideration, Judge Mentz did no more than substitute his view of the witnesses' credibility for that of the jury. App. 82. Langevine, her daughter, and a disinterested bystander all testified that she was not yelling or disturbing the neighborhood at the time of her arrest. Although Officers Kelsey and Johnson testified otherwise, the jury clearly did not credit their testimony in this regard. Both parties' expert witnesses agreed that Ms. Langevine's arrest was not proper if her version of events was credited. In light of the evidence in the record, Judge Robinson did not abuse his discretion in reconsidering the grant of a new trial and reinstating the jury's verdict on liability.

■ Defendants' new trial motion was also based on the claim that the jury's verdict was excessive. Verdicts may be labeled excessive, however, only when they are "beyond all reason" or "so great as to shock the conscience." *Williams v. Steuart Motor Co.,* 494 F.2d 1074, 1085 (D.C.Cir.1974). Courts may not set aside a jury verdict merely deemed generous; rather, the verdict must be so unreasonably high as to result in a miscarriage of justice. *See Barry v. Edmunds,* 116 U.S. 550, 565, 6 S.Ct. 501, 509, 29 L.Ed. 729 (1886). Therefore, a jury's determination of damages may only be disturbed if it "is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Jeffries v. Potomac Dev. Corp.,* 822 F.2d 87, 96 (D.C.Cir.1987). Indeed, because the Seventh Amendment right to a jury trial pervades the realm of jury verdict decisions, this circuit allows remittitur of jury verdicts only if the reduction "permit[s] recovery of the highest amount the jury tolerably could have awarded." *Carter v. District of Columbia,* 795 F.2d 116, 135 n. 13 (D.C.Cir.1986). A court must be especially hesitant to disturb a jury's determination of damages in cases involving intangible and non-economic injuries. *See Ruiz v. Gonzalez*

*Caraballo,* 929 F.2d 31, 34 (1st Cir.1991) ("Translating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken.") (quoting *Wagenmann v. Adams,* 829 F.2d 196, 215 (1st Cir.1987)).

■ In this case, the jury awarded Langevine $1,500 for property damage to her car and glasses and $200,000 for "[b]odily injury, physical pain and suffering, [and] mental anguish." App. 43. The award was supported by evidence that: (1) Langevine's glasses were broken during her arrest and her car was damaged when Officers Kelsey and Johnson left it unattended on the street rather than impounding it for safekeeping; (2) Langevine's arms were wrenched behind her and her face slammed into the hood of the police car at the time of her arrest; (3) Langevine's wrists were bruised by the handcuffs, and the bruises were still visible at trial, more than three years after her arrest; (4) Langevine suffered headaches and neck pain after the incident; (5) Langevine was humiliated in front of her daughters; (6) Langevine suffered emotional distress during her arrest and incarceration and feared for her safety; (7) Langevine suffered humiliation and loss of reputation when she was forced to explain to her church and an elderly woman for whom she cares that she was absent from services because she had been arrested; (8) long after her arrest, Langevine continued to feel "spiritually wounded" and to fear police officers. Although the jury found against Langevine on her assault and battery claim, the import, if any, of that verdict was before Judge Robinson at the time he ruled. For the damages awarded for the liability found, it surely was not an abuse of discretion for Judge Robinson to conclude that the verdict was not so unreasonably high as to result in a miscarriage of justice.

We find that Judge Robinson did not abuse his discretion in reinstating the jury's verdict. The jury obviously believed that Langevine's emotional and other intangible damages were significant. The jury's valuation of those damages was neither "beyond all reason" nor "so great as to shock the conscience." *See Williams,* 494 F.2d at 1085.

Judge Robinson found that he had no good basis upon which to second-guess the jury, and we certainly have no basis to reject his judgment on an abuse of discretion standard of review.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the District Court denying defendants' motion for a new trial and ordering the entry of judgment in favor of Langevine.

*So ordered.*

**KAREN LeCRAFT HENDERSON,**
Circuit Judge, concurring in part and dissenting in part:

While I concur in the court's resolution of whether the weight of the evidence mandated a new trial, I cannot join in the conclusion that the district court properly denied a new trial on damages.

Under the law of the case doctrine, "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry,* 87 F.3d 1389, 1393 (D.C.Cir.1996) (en banc) (footnote omitted). Of course, "[a]lthough courts are often eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish." 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478, at 789 (1981). Indeed, "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983) (footnote omitted); *see also Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *United States v. Singleton,* 759 F.2d 176, 183 n. 2 (D.C.Cir.1985). The court thus is largely correct about the inapplicability of law of the case to interlocutory orders. Majority Opinion (Maj.Op.) 1022–23. It fails, however, to address an important caveat to that principle. When two trial judges reach opposite conclusions on a purely discretionary matter (including an interlocutory matter), consistency and fairness require giving effect to the first

judge's decision. *See Williams v. Commissioner,* 1 F.3d 502, 503–04 (7th Cir.1993). Assessing the excessiveness of the damages verdict is a discretionary matter and the original judge's decision that it was excessive should ordinarily control.

Even if we ignore that decision and review the second district judge's order under an abuse of discretion standard, as we would had there been only one ruling on the new trial motion, the portion of the order regarding the excessiveness of the damages must nonetheless fall. Whether to grant a new trial generally rests within the district court's discretion. *Hutchinson v. Stuckey,* 952 F.2d 1418, 1420 (D.C.Cir.1992); *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 646 (D.C.Cir.1988). Nevertheless, if the verdict lacks a foundation not only in the facts of the case but also in the jury's findings of liability, it must be rejected. The jury awarded Langevine $200,000 for minimal, if any, physical injuries and a brief period of emotional trauma. JA 43. Lesser verdicts repeatedly have been deemed excessive for greater injuries. *See, e.g., Hutchinson,* 952 F.2d at 1422 (affirming district court's determination that $50,000 was excessive for permanent "significant injury" to finger); *Johnson v. Parrish,* 827 F.2d 988, 991 (4th Cir.1987) (affirming district court's determination that $150,000 was excessive for partially disabling neck and arm injury). It is neither necessary nor appropriate, however, to question the trial judge's assessment of the verdict in the abstract in order to conclude that a new trial is required with respect to damages. The jury's liability verdict itself reveals the district court's legal error in denying a new trial on damages.

The plaintiff's claims included two counts of assault and battery. App. 34. The district judge who instructed the jury charged that "assault is an intentional and unlawful threat or attempt either by words or by acts to physically harm the victim" and that "battery is an intentional and unlawful harmful or offensive touching or use of force upon the physical person of another." Trial Tr. at 573, *Langevine v. District of Columbia* (D.D.C. 1993) (No. CA 91–1026). The jury found that officers Kelsey and Johnson did not commit

assault and battery. App. 43. With that finding, the jury necessarily determined that Kelsey and Johnson did not touch or threaten Langevine intentionally and unlawfully. Because there is no doubt but that Kelsey and Johnson touched Langevine intentionally, the jury's finding can only mean that they did not touch her unlawfully. Having determined that Kelsey and Johnson touched Langevine lawfully, the jury nevertheless awarded Langevine $200,000 for "[b]odily injury, physical pain and suffering, [and] mental anguish." *Id.* In view of its defense verdict on assault and battery, however, the jury had to have rejected her claims that "officers slammed her forehead down on the hood of the police car, smashing her glasses onto the bridge of her nose, and pulled her arm back while [they] applied handcuffs to her arms." *Id.* at 24. Either that or the jury believed that those alleged actions did not constitute an unlawful touching, a frankly preposterous alternative. Langevine's damages, then, consisted of temporary wrist pain from having been handcuffed "for at least one-half hour," *id.* at 25, a four-hour detention at the police

station, *id.* at 27, and mental anguish. Her mental anguish included humiliation, primarily resulting from telling her fellow church members of her arrest.[1] Of more significance, the district court, in its recitation of evidence supporting the denial of a new trial on damages, was wrong as a matter of law to include physical pain resulting from "having her head pushed against the hood of a police car and her arms yanked and twisted behind her back so severely that it felt as if one of her shoulders was being dislocated." *Id.* at 84. The liability verdict and the damages verdict[2] are so patently inconsistent that the district court's failure to grant a new trial on damages constitutes, in my view, a serious abuse of discretion.[3]

---

1. The record reflects that as to this item, Langevine is the author of her own misfortune. Langevine did not go to church the evening of her arrest, Trial Tr. 18, and, according to her counsel at oral argument, told those friends who inquired at church services *one week later* why she was absent the Sunday before. Humiliation suffered as the result of voluntarily disclosing the humiliating episode—keeping in mind that confession is good for the soul—should, at a minimum, mitigate any resulting mental anguish.

2. I note also that the complaint includes, unlike the ordinary prayer for relief, a specific request for $50,000 in compensatory damages. App. 35. An award over four times greater than the amount requested strikes me as excessive on its face. *See McDermott v. Severe*, 202 U.S. 600,

612, 26 S.Ct. 709, 713, 50 L.Ed. 1162 (1906) (approving jury instruction that damages verdict should not exceed specific amount claimed); *see also Chesapeake & Ohio Ry. Co. v. Carnahan*, 241 U.S. 241, 244–45, 36 S.Ct. 594, 595, 60 L.Ed. 979 (1916) (same); *cf. Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22, 111 S.Ct. 1032, 1045–46, 113 L.Ed.2d 1 (1991) (holding due process requires, *inter alia*, that punitive damages "have some understandable relationship to compensatory damages").

3. In order to avoid further burdening the judiciary with this already superannuated case, the district court should instead order a new trial nisi remittitur. *See, e.g., Hutchinson*, 952 F.2d at 1423 n. 5.