United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 12, 1999 Decided January 18, 2000 

 No. 99-7028

 Tri County Industries, Inc., 
 Appellant

 v.

 District of Columbia, et al., 
 Appellees

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 94cv02014)

 Frank J. Emig argued the cause for the appellant.

 Donna M. Murasky, Assistant Corporation Counsel, Office 
of the Corporation Counsel, argued the cause for the appel-
lees. Robert R. Rigsby, Interim Corporation Counsel, and 

Charles L. Reischel, Deputy Corporation Counsel, Office of 
the Corporation Counsel, were on brief for the appellees.

 Before: Edwards, Chief Judge, Silberman and Henderson, 
Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: This appeal 
arises from proceedings determining what damages, if any, 
appellant Tri County Industries, Inc. (Tri County) should be 
awarded to compensate for what this court previously deter-
mined to be the District of Columbia's (District) violation of 
its fifth amendment right to procedural due process. See Tri 
County Indus., Inc. v. District of Columbia, 104 F.3d 455, 
460-62 (D.C. Cir. 1997). Following the first of two trials, the 
jury awarded $5,000,000. The trial court then granted a new 
trial, nisi remittitur to $1,000,000, which was refused. At the 
second trial, the district court admitted evidence excluded 
from the first and the jury returned nominal damages of 
$100. Tri County challenges the court's order granting the 
District's alternative motion for a new trial as well as several 
evidentiary rulings in the second trial and requests reinstate-
ment of the first award or, in the alternative, a new trial due 
to allegedly erroneous evidentiary rulings during the second 
trial. For the reasons set forth below, we reverse the district 
court's order of July 23, 1998 and reinstate the original jury 
verdict of $5,000,000.

 I.

 On February 26, 1993 Tri County obtained a building 
permit from the District authorizing conversion of an empty 
warehouse into a facility for its business of decontaminating 
soil tainted with oil and other hazardous materials. While 
securing the permit, Tri County also obtained an air quality 
permit as well as a waiver of the required environmental 
impact statement. Even several months after it obtained the 
necessary permits, however, it had not begun operating due 
to equipment delivery delays. On September 7 it received a 
District citation for storing soil at the facility without the 

required certificate of occupancy.1 Tri County neither re-
moved the soil nor paid the fine; consequently, the District 
issued a stop-work order on September 22. Tri County did 
not challenge the citation or order. Its failure to respond led 
to an order by the District Department of Consumer and 
Regulatory Affairs (DCRA) dated October 13, 1993 purport-
ing to suspend Tri County's building permit.

 The building permit had already been suspended on Sep-
tember 20, however, when, prompted by a groundswell of 
community opposition to the project, Hampton Cross, acting 
DCRA director, summarily suspended Tri County's building 
permit. The DCRA sent Tri County a letter requesting 
further information on October 15, 1993 to which Tri County 
did not respond. On December 6 the DCRA sent another 
letter, this time rescinding the environmental impact state-
ment waiver and threatening imminent revocation proceed-
ings on the building permit. Tri County's only response was 
to remove the soil that had caused the initial citation. Tri 
County's counsel advised it that an appeal likely would be 
influenced by politics given the strong community opposition 
and that he could not guarantee when such an appeal would 
be heard. Given the high rental cost of the property in 
question and the necessity of purchasing, without delay, 
costly equipment in high demand, Tri County estimated the 
costs of an appeal at nearly $1,000,000. With no assurance of 
a prompt hearing and the prospect of a politically influenced 
review process, Tri County abandoned its project.

 Tri County brought suit under 42 U.S.C. s 1983 and suc-
ceeded in its challenge to the September 20 suspension of its 
building permit when this court reversed the district court's 
dismissal, holding that the suspension violated Tri County's 
right to procedural due process. See Tri County Indus., 104 
F.3d at 460-62. We remanded for consideration of damages. 

__________
 1 A certificate of occupancy is issued when renovation of a struc-
ture has been completed in conformity with the earlier application 
for a building permit and the building is found to be in compliance 
with applicable zoning regulations and the building code. See 12 
DCMR s 118, 39 DCR 8711-12.

See id. at 462. The subsequent proceedings in the district 
court are at issue in this appeal.

 The first trial began on April 14, 1998. Tri County pre-
sented evidence of its costs already incurred, evidence of lost 
profits through the testimony of a mechanical engineer and 
the report of an economist and evidence as to the local 
market demand for a soil treatment facility through the 
testimony of a geologist at an environmental consulting firm. 
The District largely accepted the testimony, often failing to 
object or seriously cross-examine. Instead, the District re-
lied on its argument that Tri County failed to mitigate its 
damages when it refused to provide the information the 
DCRA requested and when it declined to challenge the stop-
work and suspension orders. The District also sought to 
demonstrate that Tri County might not have been allowed to 
operate its facility because community opposition, arising 
largely out of concern over the facility's effect on the health 
and safety of the community, would derail the regulatory 
procedures. Hindering its argument was the trial court's 
exclusion or striking of evidence relating to health and safety 
concerns. See Joint Appendix (JA) 186-89. The court found 
the District's permitting process had resolved the issues as a 
matter of law. See id. at 182-83, 189. In the end, the jury 
awarded $5,000,000.

 The trial court denied the District's post-trial motion for 
judgment as a matter of law but granted the alternative 
motion for a new trial, nisi remittitur to $1,000,000. Ad-
dressing the District's primary argument, the court ruled that 
the District had to establish both the standard for reasonable 
mitigation under the circumstances and that Tri County failed 
to meet it. The District failed to sustain that burden, particu-
larly in light of Tri County's evidence that it would have to 
spend nearly $1,000,000 to recoup its expenses of $536,421. 
The court reversed field, however, in reviewing the award for 
future damages which, assuming the $536,421 in costs were 
awarded, constituted $4,463,579 of the $11,628,174 figure Tri 
County presented to the jury. Emphasizing that Tri County 
did not "invest[ ] a penny to seek reinstatement of the 
unlawfully suspended building permit," the court ruled that 

the District need not have established a reasonableness stan-
dard because Tri County's failure to mitigate was unreason-
able per se. District Court's Memorandum Order filed July 
23, 1998 (Memorandum Order), at 2. The court also found 
the lost profits evidence should not have been considered by 
the jury without the District having the chance to prove that 
the facility might not have been allowed to operate. Accord-
ingly, the court found the estimate of lost profits "too specula-
tive and remote" and, in any event, found the award "grossly 
excessive." Id.

 Tri County declined the $1,000,000 remittitur and a second 
trial commenced on January 29, 1999. In this trial, the 
district court allowed the District to admit the health and 
safety evidence originally excluded. This time the District 
challenged Tri County's experts and offered the testimony of 
three new witnesses, one of whom refuted Tri County's 
estimate of future profits. Another witness discussed a po-
tential zoning bar to the facility and the third discussed 
health and safety hazards associated with soil remediation. 
The second jury awarded Tri County nominal damages of 
$100.

 II.

 We review the district court's grant of a new trial for abuse 
of discretion. See Langevine v. District of Columbia, 106 
F.3d 1018, 1023 (D.C. Cir. 1997) (citing Hutchinson v. Stuck-
ey, 952 F.2d 1418, 1420-21 (D.C. Cir. 1992)). "[A] more 
searching inquiry is required" if the new trial is granted than 
if denied, however, because of "the concern that a judge's 
nullification of the jury's verdict may encroach on the jury's 
important fact-finding function." Id. at 1023 (quoting Vander 
Zee v. Karabatsos, 589 F.2d 723, 729 (D.C. Cir. 1978)).

 In its post trial order, the trial court stated three reasons 
for granting a new trial: (1) Tri County's failure to mitigate; 
(2) the speculativeness in Tri County's projections of future 
profits; and (3) the "grossly excessive" jury verdict. Memo-
randum Order at 2. The court also thought it had erred in its 
evidentiary rulings excluding evidence related to community 

opposition to the project. See Memorandum Order at 2 
(plaintiff's expert testimony should not have been received 
"without allowing [the District] to adduce proof that plaintiff's 
soil remediation facility would never have been permitted to 
operate"). Tri County challenges each ground.

 First, the court found Tri County's failure to expend any 
resources to seek reinstatement of its building permit per se 
unreasonable in light of the $11,628,174 it claimed in lost 
profits. See id. Tri County contends that the determination 
of whether a party satisfied its duty to mitigate, a question 
that turns on what action was reasonable under the circum-
stances, see, e.g., Berger v. Iron Workers Reinforced Rodmen, 
Local 201, 170 F.3d 1111 (D.C. Cir. 1999); Lennon v. United 
States Theatre Corp., 920 F.2d 996 (D.C. Cir. 1990), is a jury 
question. Here, we agree with Tri County that its alleged 
failure to mitigate was an issue properly submitted to the 
jury. See Hilord Chem. Corp. v. Ricoh Elecs., Inc., 875 F.2d 
32, 38-39 (2d Cir. 1989); Waldorf v. Shuta, 142 F.3d 601, 623-
24 (3d Cir. 1998). Moreover, failure to mitigate is an affirma-
tive defense and the party asserting it bears the burden of 
demonstrating the opposing party's failure to act reasonably 
under the circumstances. See Lennon, 920 F.2d at 1000; see 
also Mark Keshishian & Sons, Inc. v. Washington Square, 
Inc., 414 A.2d 834, 842 n.19 (D.C. 1980) (burden of showing 
mitigation is on party raising issue) (citing Camalier & 
Buckley-Madison, Inc. v. Madison Hotel, Inc., 513 F.2d 407, 
419-20 n.92 (D.C. Cir. 1975)).

 Tri County created a jury issue when it offered an explana-
tion for its failure to challenge the DCRA's suspension order 
or otherwise pursue administrative remedies. Its explanation 
included evidence that it believed suggested the reviewing 
body, the District's Board of Appeals and Review, might not 
have acted impartially due to political influence and that an 
appeal would have been indefinitely slow and expensive.2 

__________
 2 Tri County's lawyer (in 1993) testified that Cross told him that 
the Board of Appeals and Review would act at the direction of the 
District's Mayor and the Mayor's chief of staff. Tri County intro-
duced Cross's deposition testimony indicating he had met with the 

Moreover, a jury justifiably could have found it reasonable for 
Tri County not to contest the September 22 stop-work order 
and subsequent suspension resulting from the failure to pay 
the fine given the pre-existing September 20 suspension. 
The District argues simply that the evidence it presented 
regarding Tri County's failure to mitigate "was firmer by 
far." Brief of Appellee at 30. Tri County responds that it is 
improper to now assess the relative strength of the parties' 
showings. Indeed, the trial court properly gave the failure to 
mitigate issue to the jury and properly instructed the jury on 
that issue:

 [T]he law requires that an injured party take all the 
 reasonable steps it can to avoid further injury and reduce 
 its loss. Tri County may not recover damages for any 
 portion of its injury which it could have avoided through 
 the exercise of reasonable care and prudence.... The 
 District asserts that Tri County by failing to pay the 
 $500 fine ... and by failing to appeal the stop work 
 order, is not entitled to any damages.
 
JA 193. Thus, to the extent the district court based its new 
trial decision on the mitigation issue, it abused its discretion 
in declaring ex post that Tri County's failure to pursue 
administrative remedies to reinstate its permit was per se 
unreasonable, thereby withdrawing the mitigation issue from 
the jury. See generally Tatum v. Morton, 562 F.2d 1279, 
1283 (D.C. Cir. 1977) ("[T]he district court's per se approach 
of imposing an absolute duty to mitigate was not sound.").

 The trial court also found that Tri County's evidence of lost 
profits was "too speculative and remote" and that the award 
of less than half of the amount Tri County estimated was 
"grossly excessive." Memorandum Order at 2. Where, as 
here, the fact of injury has been established and the defen-
dant's action (suspension of the building permit) affected the 
plaintiff's ability to present actual revenue and cost figures to 

__________
Mayor and members of the community opposition following the 
suspension of the permit. Tri County's lawyer also testified that it 
would have taken eight to twelve months to resolve the matter 
administratively. JA 76-77.

support a lost profits projection, the applicable standard for 
proving lost profits damages is the one this court enunciated 
in Samaritan Inns, Inc. v. District of Columbia, 114 F.3d 
1227 (D.C. Cir. 1997):

 Where the tort itself is of such a nature as to preclude 
 the ascertainment of the amount of damages with cer-
 tainty, it would be a perversion of fundamental principles 
 of justice to deny all relief to the injured person.... In 
 such case, while the damages may not be determined by 
 mere speculation or guess, it will be enough if the 
 evidence show the extent of the damages as a matter of 
 just and reasonable inference, although the result be only 
 approximate. Thus, while a plaintiff seeking to recover 
 lost profits must ordinarily prove the fact of injury with 
 reasonable certainty, proof of the amount of damages 
 may be based on a reasonable estimate. Although a 
 court will not permit a plaintiff to recover damages based 
 on "mere speculation or guess," the fact that an estimate 
 is uncertain or inexact will not defeat recovery....
 
114 F.3d at 1234-35 (quoting Story Parchment Co. v. Pater-
son Parchment Paper Co., 282 U.S. 555, 563 (1931)) (citations 
omitted).

 Tri County produced evidence indicating it sustained lost 
profits of $11,628,174. The evidence included the testimony 
of eight witnesses3 and ranged from projections of tons of 
contaminated soil the facility would treat per hour and the 
number of hours it would operate per day to estimates of 
equipment and labor costs. With expert testimony regarding 
the accessible market for soil remediation and a comparison 
of service rates for similar operations, an economist projected 
the profitability of Tri County's facility. Their respective 
opinions were left largely unchallenged by the District. Re-
gardless whether the estimates were on the high end, that is, 

__________
 3 The witnesses included its President, Glenn Selzer, its Vice 
President and its CPA. In addition, a chemical engineer, a remedi-
ation expert, a financial economist, a mechanical engineer and an 
expert in soil remediation testified as to Tri County's costs and lost 
profits.

"uncertain or inexact," Samaritan Inns, 114 F.3d at 1235, 
they were sufficiently well-founded to avoid characterization 
as "mere speculation or guess." Id.

 Moreover, we question the trial court's finding that the 
award "shock[ed] the judicial conscience." Memorandum Or-
der at 2. Tri County presented evidence that its costs 
amounted to $536,421 and its lost profits amounted to 
$11,628,174. The jury awarded $5,000,000, less than half of 
the total amount claimed and, for that matter, less than half 
of the future profits estimate standing alone. The award was 
within the "reasonable range within which the jury may 
properly operate." Langevine, 106 F.3d at 1024.

 As demonstrated above, the trial court tried to cover all 
bases in its order granting a new trial but the order reveals 
that the court's real concern was its exclusion of evidence 
regarding health and safety issues which may have led to 
community resistance and, perhaps, regulatory barriers to Tri 
County's project. For example, while declaring the award 
grossly excessive, the district court expressed its dissatisfac-
tion with its original evidentiary rulings:

 [T]he jury's award ... shocks the judicial conscience, 
 particularly in view of the realistic prospect, which I did 
 not permit defendants to prove at trial, that there would 
 be continued community resistance to increased dump 
 truck traffic ... and a very real likelihood that the 
 District of Columbia would have closed down the remedi-
 ation facility ... or that it never would have been 
 permitted to commence operations at all.
 
Memorandum Order at 2-3; see also id. at 2 (plaintiff's 
expert testimony should not have been received "without 
allowing [the District] to adduce proof that plaintiff's soil 
remediation facility would never have been permitted to 
operate").

 In the excerpt above, the district court alluded to the 
District's argument under Carey v. Piphus, 435 U.S. 247, 
266-67 (1978), that a plaintiff who suffers a procedural due 
process violation is entitled only to nominal damages if he 

would have suffered the same "injury" absent the violation. 
Thus, the District argues that here the procedural violation 
caused no compensable injury because the action taken, sus-
pension of the permit, was justified even if improperly execut-
ed. The District claimed that Tri County's damages were 
minimal because the facility either would not have become 
operational or would not have been operational for long due 
to community resistance.

 The trial court excluded the District's health and safety 
evidence under Rule 403 and determined that the permitting 
process disposed of these issues as a matter of law. See JA 
178, 189. The District argues that the evidentiary rulings 
practically negated its argument under Carey that the project 
would have been halted anyway. Despite its reliance on this 
argument, the District never met the trial court's repeated 
injunction to show how the health and safety issue would have 
triggered additional regulatory procedures or otherwise al-
lowed the District to rescind its earlier approval. See JA 172; 
see also id. at 168-69, 172-75, 186-87. In short, the District 
failed to show that community concern would be brought to 
bear on Tri County's operation, specifically through the regu-
latory process. Accordingly, the district court did not abuse 
its discretion in excluding the evidence. In light of our 
findings that Tri County's evidence was properly before the 
jury and the District's evidence was properly excluded, we 
conclude that the district court, in granting a new trial based 
on a revised view of its original rulings, did abuse its discre-
tion.4 See Langevine, 106 F.3d at 1023 (a "more searching 
inquiry" is particularly necessary "when the motion [for new 
trial] is granted on the ground that the verdict is against the 
weight of the evidence").

 For the foregoing reasons, we reverse the district court's 
order of July 23, 1998 and reinstate the original jury verdict of 
$5,000,000, with interest pursuant to 28 U.S.C. s 1961. The interest shall be
calculated at a rate of 5.391% per annum, beginning on April 20, 
1998, and computed daily until the date of payment. See 28 U.S.C.A. s 1961
(West 1994 & Supp. 2000). We vacate the verdict and judgment resulting 
from the second trial.

 So ordered.
__________
 4 In light of our holding, we need not reach Tri County's alterna-
tive grounds for reversal based on the second trial.